CARPENTER (FIEDLER v.). See Case No. 4,759.

CARPENTER (FRAZER v.). See Case No. 5,069.

CARPENTER (HAINES v.). See Case No. 5,905.

CARPENTER (HOPKINS v.). See Case No. 6,686.

CARPENTER (INNES v.). See Case No. 7,049.

CARPENTER v. The ISLAND CITY. See Cases Nos. 7,108 and 7,109.

## Case No. 2,431.

### CARPENTER v. ROBINSON et al.

[1 Holmes, 67.] [1]

Circuit Court, D. Rhode Island. June, 1871.

RIGHTS OF ASSIGNOR FOR BENEFIT OF CREDITORS —DEALINGS OF ASSIGNEE WITH ESTATE — OPINION EVIDENCE.

1. The assignor of his estate in trust to distribute the proceeds thereof ratably among his creditors, upon release of their claims within a specified time, and pay over to him the balance of proceeds remaining undistributed at the end of that time, may, after expiration of the specified period, by bill in equity in which the assignee and the only unpaid creditor are made parties defendant, compel a full and exact account of the dealings of the assignee with the trust estate.

2. In order to hold a purchaser of trust property from a trustee authorized to sell, liable in equity to account for and pay the proceeds thereof to the cestui que trust, on the ground of fraudulent collusion with the trustee in the purchase, in the absence of other evidence of fraud, such inadequacy of consideration as would of itself be an indication of fraud must be proved beyond question.

[See note at end of case.]

[3. Opinions of witnesses who have knowledge of land in controversy, and of sales in its immediate vicinity, are admissible in evidence, although such witnesses may not be, strictly speaking, experts.]

[In equity. Bill by Powell H. Carpenter against Attmore Robinson and J. H. Carpenter, for an accounting.]

SHEPLEY, Circuit Judge. The complainant, on the twentieth day of December, A. D. 1858, executed to Attmore Robinson, one of the defendants, a general assignment of all his property for the benefit of his creditors. The deed of assignment authorized the assignee to take immediate possession of all the property, and "as soon as conveniently may be, by public or private sale, for the best price that can be obtained, convert all and singular the premises into money," and to collect all debts due the assignor; and, after paying the expenses of making the assignment, and of executing the trust thereby created, and compensation for his services as assignee, to appropriate the proceeds of such sale and collections, first, to reimburse the assignee for advances made to the assignor for the payment of confidential debts; secondly, to the payment, ratably in proportion to their debts, to such creditors of the assignor as should within six months from the date of the assignment execute a release of their claims; thirdly, to pay over to the assignor the shares of such creditors as did not within six months release their claims, and also any balance remaining after the payments aforesaid.

A portion of the assigned estate consisted of about seventy-five acres of land, together with a wharf, buildings, and improvements,

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

comprising, with the exception of six acres owned by the United States, the whole of an island lying in Narragansett bay, betweeen the main-land and Conanicut Island, commonly known as Dutch Island, and forming a part of the town of Jamestown, in the county of Newport, and state of Rhode Island. This estate the complainant had previously, on the first day of April, 1857, mortgaged to James H. Carpenter, one of the defendants, to secure the payment of two notes of seven hundred and fifty dollars each, payable in two and three years from date respectively; and also on the same day had mortgaged to Benjamin W. C. Carpenter, to secure the payment to the said Benjamin of the interest on the sum of three thousand five hundred dollars semi-annually during his life, and the payment to his personal representatives of the principle sum within six months after his decease. Benjamin W. C. Carpenter died in June, 1859, and bequeathed this mortgage and mortgage debt to an infant daughter of J. H. Carpenter, the defendant. On the fifth day of September, 1859, Attmore Robinson, the assignee, conveyed the Dutch Island estate to James H. Carpenter for the nominal consideration of one dollar, the incumbrances at that time amounting to between five and six thousand dollars.

On the seventeenth day of July, 1867, the complainant filed the bill in equity in this case against his assignee Attmore Robinson, and his brother J. H. Carpenter, the purchaser of the Dutch Island estate.

The complainant alleges, that the conveyance of the Dutch Island estate was without any consideration, and was made by collusion between the defendants, with intent to defraud the complainant and his estate, and to deprive him of the benefit and advantage which would have resulted from a proper disposition of the Dutch Island estate; that, as soon as he heard of the conveyance, which was a short time after the same had been executed, he earnestly protested against the same to said defendant Robinson, and he believes that the fact that said protest was made was communicated by said Robinson to said Carpenter. Complainant further states, that he was informed in the early part of the year 1863, or about that time, that negotiations had been entered into with a view to the purchase of said Dutch Island estate by the government of the United States; that, being at that time at a distance from the state of Rhode Island, and in destitute circumstances, he caused, through his friends in Rhode Island, a remonstrance to be forwarded to the authorities of the United States against the purchase; that at the same time a demand was made upon defendant Carpenter for an adjustment and settlement of defendant's claims on the premises, and a demand upon the assignee to furnish an account of his acts and doings as assignee; that Carpenter made no reply, and a written refusal to furnish any statement to complainant's counsel was received from defendant Robinson. By way of excuse for his long delay to assert his claims, he states, that since the assignment he has been in infirm health, and poor and destitute, and therefore unable to bear the expense of litigation. The complainant alleges that Dutch Island was by deed dated July 1, 1864, but not delivered and recorded until Aug. 6, 1866, finally conveyed to the United States, and that the consideration named therein, the sum of twenty-one thousand dollars, was paid to James H. Carpenter, Aug. 7, 1866. The bill alleges that all debts due from the complainant at the time of the assignment have been satisfied and discharged, and offers to pay and discharge any unsatisfied debts, if any such exist.

The prayer of the bill is for an account from the assignee of the property taken possession of by him under the assignment, and of the disposition of the same, and of the debts paid, compromised, and discharged by him, and a transfer to the complainant of any balance remaining in his hands. It further seeks for a decree that Robinson and Carpenter shall account for the rents and profits of the Dutch Island estate, and for the proceeds of the sale to the United States, and a payment to the complainant of all such profits and proceeds, after deducting the sums paid in discharge and satisfaction of the two mortgages, dated April 1, 1857.

The answers of the defendants deny the collusion and fraud charged in the bill. The defendants allege that the price for which the Dutch Island estate was sold, being the amount of the incumbrances upon it, which, they state, amounted with interest and taxes to five thousand six hundred dollars, exceeded the then value of the estate. Both defendants swear that Carpenter, after the conveyance to him, offered to sell the estate for the same price he had paid for it; to wit, one dollar over and above the incumbrances thereon. They deny that the estate cost the complainant eight thousand dollars, as alleged in the bill, but aver, on the contrary, that he paid for the land the sum of two thousand six hundred dollars, and that the improvements he put upon it were not worth more than two thousand two hundred and fifty dollars. They aver that Robinson made repeated efforts to sell the estate for the largest sum that could be realized for it; that he applied to persons living in the vicinity of the estate, and acquainted with the estate and its value, and could not find any person who would pay anything for the estate above the incumbrances thereon. The answers deny that the complainant made any protest or objection to said sale until the year 1863, at the time of the negotiations for the sale to the United States.

The assignor, by the terms of the deed of assignment, as well as by the rule of law,

being entitled to the residue of the estate after the payment of debts, the complainant is the proper party to come into a court of equity for an account and for relief against any breach of trust on the part of the assignee. After the extinguishment of the debts, the assignor becomes clothed with all the rights and powers of a cestui que trust to the same extent as the creditors before their rights were extinguished. Such a bill in equity in behalf of the assignor against an assignee who had fraudulently and improperly conveyed the trust property to another, not as a means of executing the trust, but as a means of extinguishing the reversionary interest of the assignor, was sustained by Mr. Justice Clifford. In the case of James, Adm'x v. Atlantic De Laine Co. [Case No. 7,177], in the circuit court, Rhode Island district, November term, 1867, not yet reported. Although the objection was made in that case that two debts of the complainant had not been paid, the court replied, that the rights of creditors in such a case would be protected in the decree granting relief. Cases undoubtedly may arise where the fraud of the assignee would operate exclusively to the detriment of the creditors, and where their discharges, given in ignorance of the fraud, would be inoperative. In such cases, the creditors would be necessary parties to the bill. In this case, as the only debts proved to be outstanding and unsettled appear to be due to James H. Carpenter, and he is made a party defendant, there seems to be no objection to the maintenance of this action on the ground of want of parties, as all parties in interest are before the court, and all their rights can, if necessary, be protected in the decree.

The evidence in this case clearly exhibits a want on the part of the assignee of reasonable diligence and prudence in the management of the trust estate. He does not appear to have kept any proper accounts of his doings in the execution of his trust, or to have ever declared or paid any dividend to the creditors otherwise than by compromise of their debts, without regard to their rights to a ratable proportion of the proceeds of the assets. If assignments of the description of this one are to be upheld, the conduct of the assignee in the management of the trust estate should be inspected with the severest scrutiny; and the utmost good faith should be exacted from him, not only in his dealings with the trust estate, but in his communications with the assignor and the creditors. To withhold any information from the creditors or the assignor which is in his possession, and which affects the value of the trust property, is such a fraud as would vitiate any settlement or compromise made by him with the assignor or the creditors, acting in ignorance of facts within the knowledge of their trustee.

The account annexed to the answer of the assignee is not properly stated, and the evi-

dence in the case tends to show that there are many errors and omissions in it which require examination and correction; and there is sufficient evidence of want of reasonable care and diligence in the management of the trust estate to render it evident that there should be a reference of the case to a master, and that the defendant Robinson should be required to account anew before him.

The principal difficulty in the case grows out of the connection of J. H. Carpenter, the defendant, with the purchase from the assignee of the Dutch Island estate. The averment in the bill is, that this conveyance was made without consideration, and was the result of a combination and confederacy between Robinson and Carpenter with the intent to deprive the complainant of any benefit from the estate. Both defendants in their answer specifically deny that there was any collusion or intention to defraud the complainant, and they deny the alleged inadequacy of the consideration paid, averring, on the contrary, that the asignee made repeated efforts to sell the estate, and could not find any one who would pay any thing for it over and above the incumbrances. They aver that the incumbrances on the estate amounted to the sum of $5,600, which was the full value of the estate at the time.

To establish the charge of fraud, and overcome the answers of the defendants, it is manifest that the burden is on the complainant to establish affirmatively beyond question such an inadequacy of consideration as would be of itself an indication of fraud on the part of the assignee.

After the lapse of some years after the sale, the property was again sold to the United States for a site for fortifications, at a vastly enhanced price. But this is no criterion of its value in the market at the time of the conveyance by the assignee. There is no evidence in the case that, at that time, any one contemplated that the property would ever be needed by the government, or available for the purposes to which it was subsequently devoted. The breaking out of a great civil war awakened the government to the defenceless condition of our coasts and harbors; and when this island was selected as a site for one portion of the coast and harbor defences, the owner of it availed himself of the necessities of the case, and the necessity of using this particular site for that special purpose, to extort from the United States a price vastly in excess of any marketable value of the property. The price paid was more than double the value of the property, as estimated according to the opinions of those of the complainant's witnesses who put the highest estimate on its value at the date of the conveyance by the assignee. We must judge the acts and conduct of the parties by the state of things existing and within their knowledge at the time of the transaction in question. The subsequent discovery or development of an element of val-

ue in the property, not within the knowledge or contemplation of either of the parties to a sale. does not afford us any aid in determining the true character of the transaction, when the issue is only one of fair value and adequate consideration, depending upon marketable value at the time.

To show the value of the Dutch Island estate, at the time of the conveyance to Carpenter, the defendant, and for the purpose of proving that the agreed consideration was grossly inadequate, the complainant has introduced the evidence of four witnesses. These witnesses testify that in their opinion the property in the year 1859 was worth $10,-000. But this opinion does not seem to be based upon that kind of knowledge which would qualify them to testify as expert witnesses, or give any great probative force to their opinions, if admissible. They are farmers, and competent, perhaps. to express an opinion upon the character of the soil and the productiveness of the land for farming purposes. The first one, Howland, says he has not purchased or sold land in that vicinity for himself or as agent for others. The next witness, Wilbur Hazard, says he does not know the price at which land sold in that vicinity in 1859. Cottrell, the next witness, who knows only of one sale of land in the vicinity, is not interrogated as to the market value of the land, but gives his opinion of its value for agricultural purposes. Jeremiah Hazard, being asked, "Are you familiar with the value of land in the vicinity of Dutch Island, and do you know the price at which land in that neighborhood was sold from 1857 to 1860?" answers as follows: "Somewhat so; I don't recollect the price of any land that was conveyed about that time."

The testimony of all these witnesses was objected to. as being an expression of opinions in a matter upon which they did not appear to be qualified to give an opinion. In the case of Howard v. City of Providence. 6 R. I. 514. a witness. who was a dealer in real estate for himself and others, had been acquainted with the value of real estate in the vicinity, had owned real estate near it, and had bought and acted for others in the sale of real estate in thirty or forty instances. was allowed to give his opinion as an expert as to the value of land, and the damage done to it by the location of a street through it. In New York, the evidence of farmers living in the vicinity, and who state that they are acquainted with the value of farming lands in the vicinity of the land in question, is received as to its value. Van Deusen v. Young. 29 Barb. 9; Robertson v. Knapp, 35 N. Y. 91. In Shaw v. City of Charleston, 2 Gray, 109, the court say, "It has become the well-settled law of this commonwealth, that the value of property, real or personal, when in controversy, may be proved by the testimony of witnesses personally acquainted with the subject, and who are sufficiently familiar with it to give an opinion of its value." In

Whitman v. Boston & M. R. R. 7 Allen, 313, 316, the supreme court of Massachusetts, reaffirming the decision in Shaw v. City of Charleston, say, that such evidence is admitted from necessity, and is not confined strictly to experts. Wyman v. Lexington & W. C. R., 13 Metc. [Mass.] 316; Haskins v. Hamilton Ins. Co., 5 Gray, 432; Fowler v. County Commissioners, 6 Allen, 92.

The better opinion, perhaps, would not justify the exclusion of this evidence, but would authorize us to receive it, and give the opinions of the several witnesses only such weight as they are respectively entitled to, when we take into consideration their means of knowledge and their opportunities for forming a correct opinion of the market value of this property, not forgetting that the foundation upon which the admissibility of this evidence rests is some supposed superior knowledge or experience of the witness in relation to the subject-matter upon which he is permitted to give an opinion as evidence.

It does not appear that any one of the complainant's witnesses would have been willing to pay any more for the property than Carpenter paid, or that any other person was willing or desirous to pay a higher price, or that property in the vicinity of like description and value sold at that time in the market for a higher price. A large number of witnesses examined on the part of the defendant, apparently with about equal opportunities of forming a correct opinion of the value of the property at the time of the sale, estimate its value at that time at less than the amount of the incumbrances. They testify that the fact that the land was for sale was generally known, and a matter of common repute in the vicinity.

The charge of fraud as against Carpenter cannot be sustained without establishing the fact of the purchase for an inadequate consideration. His purchase cannot be considered fraudulent as against the creditors, or against the complainant, if he in good faith paid what was at the time a fair value for the property.

Both the defendants were well acquainted with the property and its value; and if the assignee sold it to J. H. Carpenter for a price less than could have been obtained for it from others, the intimate relations of the parties would go far to prove such knowledge on the part of Carpenter, as would charge the estate in his hands, and require him to account for the proceeds. But the burden of proof is on the complainant to establish this fact, by evidence sufficient to overcome the effect of the denials in the answer. This he assumes to do by the evidence of opinions as to the value. But we think, after a careful review of all the testimony in the case, that the preponderance of opinion tends to show that the value at the time of the sale did not exceed the amount of the incumbrances. To hold a party guilty of fraud in the purchase

from a trustee, in the absence of any direct evidence of fraud or collusion, upon an inference drawn from an alleged inadequacy of price, such inadequacy should be proved beyond question.

Bill dismissed as against the defendant Carpenter, and cause referred to a master for an account as against the defendant Robinson.

[NOTE. Mere inadequacy of price may be so great as to be evidence of fraud, but is not in itself a fraud for which a court will pronounce a deed to be absolutely void. Wright v. Stannard, Case No. 18,094. In Follett's Heirs v. Rose, Id. 4,900, it is said that inadequacy of consideration does not invalidate a contract unless it be so gross as to strike every one with a presumption of fraud; and, to the same effect, see Surget v. Byers, Id. 13,629. The supreme court of the United States in Eyre v. Potter, 15 How. (56 U. S.) 42, in passing upon this question, held that, while inadequacy of consideration was not of itself a distinct principle of equity, yet there may be such an unconscionableness or inadequacy in a bargain as to demonstrate such gross imposition, or some undue influence, as will justify the interference of a court of equity, but it must be such as to shock the conscience, and amount in itself to conclusive and decisive evidence of fraud.]

CARPENTER (ROSS v.). See Case No. 12,072.

CARPENTER (TAYLOR v.). See Cases Nos. 13,784 and 13,785.

CARPENTER (TUCKER v.). See Case No. 14,217.

CARPENTER (UNITED STATES v.). See Case No. 14,727.

CARPENTER (WILLIS v.). See Case No. 17,770.

CARPENTIER (COURTOIS v.). See Case No. 3,286.

CARPENTIER (UNITED STATES v.). See Case No. 14,728.

## Case No. 2,432.

### In re CARR.

[3 Sawy. 316;[1] 21 Int. Rev. Rec. 30.]

District Court, D. Oregon. March 27, 1875.

ALASKA, INDIAN COUNTRY — SECTION 23 OF THE ACT OF 1834 IN FORCE IN ALASKA — DETENTION OF PERSON ARRESTED IN INDIAN COUNTRY BY MILITARY AUTHORITY — ARREST BY MILITARY AUTHORITIES NOT AUTHORIZED EXCEPT UPON PROBABLE CAUSE.

1. Upon the extension of sections 20 and 21 of the Indian intercourse act of 1834 [4 Stat. 732] over the territory of Alaska by force of the act of March 3, 1873 [17 Stat. 530], said territory became, so far as the introduction and disposition of spirituous liquors therein is concerned, what is known in the law as "Indian Country," and, therefore, the military force of the United States may be employed therein for the arrest of persons who violate either of said sections.

[Cited in Waters v. Campbell, Case No. 17,264; Kie v. U. S., 27 Fed. 352.]

[See U. S. v. Stephens, 12 Fed. 52.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2. Section 23 of said Indian intercourse act which authorizes the president to employ the military force of the United States to make arrests in the Indian country, was in force in Alaska so far as the introduction and disposition of spirituous liquors therein is concerned, from and after the extension of said sections 20 and 21 of said act over said territory.

3. No person arrested by the military authority in the Indian country for the introduction or disposition of spirituous liquors therein, contrary to law, can be lawfully detained by such authorities more than five days after such arrest before removing him for delivery to the civil authorities for trial.

[See Waters v. Campbell, Case No. 17,265.]

4. A military officer in making an arrest under said section 23 acts as an officer of the civil law, and to justify such arrest it must appear upon oath that there is probable cause, as provided in the fourth amendment to the constitution of the United States.

[Habeas corpus. Petition by John A. Carr for a writ of habeas corpus to inquire into the cause of his detention by the military authorities of the United States. The petitioner demurred to the return.]

Joseph N. Dolph and Joseph Simon, for petitioner.

Rufus Mallory, for respondent.