THE FIRST NATIONAL BANK OF LEWISTON

*vs.*

CALVIN N. DWELLEY.

Androscoggin.    Opinion April 27, 1881.

*Trust.    Fraudulent conveyance.*

Where a debtor receives the title to property for the specific purpose of conveying it to another, he acquires no such interest therein as would make the execution of the trust upon which he received it (whether so constituted as to be legally binding or not) fraudulent as against his creditors, no fraudulent intent being made to appear.

ON REPORT.

This is a writ of entry, dated July 22, 1879. Plea, the general issue.

The plaintiff, on the 30th day of November, 1876, discounted a note of one thousand dollars, signed by Dwelley & Mower, and indorsed by Darwin Dwelley, the father of this defendant. This note was renewed March 3, 1877, July 6, 1877, and January 9, 1878, each renewal having been signed by Dwelley & Mower and indorsed by Darwin Dwelley.

October 17, 1878, the plaintiff brought suit on the note of January 9, against Darwin Dwelley, on which suit real estate attachments were duly returned, judgment obtained at the April term of this court, 1879, and execution issued thereon May 10, 1879, and was duly levied on the demanded premises as the property of Darwin Dwelley.

Darwin Dwelley prior to indorsing any of the notes conveyed certain real estate, situated in Brunswick village, then owned by him in his own right, to Rowena W. Dwelley, his wife. On the 17th day of May, 1877, Rowena conveyed the Brunswick village property to the Lunt heirs by deed recorded July 15, 1877; the Lunt heirs on the same day conveyed the demanded premises to Darwin, and Darwin on the same day conveyed the same to the defendant, Calvin N. Dwelley; the two deeds last named were recorded March 8, 1878.

At the time of the conveyance to this defendant, he was not informed of his father's indebtedness to the plaintiff.

Other facts, as found by the court, are stated in the opinion.

*Frye, Cotton and White,* for the plaintiffs.

*L. H. Hutchinson* and *A. R. Savage,* for the defendant.

BARROWS, J.   Notwithstanding the sinister construction which the demandant's counsel in their ingenious argument put upon some expressions used by Darwin Dwelley and the defendant in their testimony, we think it plainly appears that the former had no legal or equitable interest in the property in Brunswick village after he conveyed it to his wife, some years before he began to indorse the notes of Dwelley & Mower to the Bank, nor any control over the same, except through the indulgence conceded by conjugal affection to the whim of his old age in making him the conduit through which the title of the Lunt farm for which the village property was exchanged should be passed to the defendant.

There is no controversy here as to the law.   Plaintiffs' counsel recognize the doctrine laid down in *French* v. *Holmes,* 67 Maine, 186, but make a strenuous effort to show that there was fraud in fact here, claiming that the antecedent conveyance from Darwin Dwelley to his wife was either *causa mortis,* or, if it were to be regarded as a gift *inter vivos,* that it was revoked by mutual consent, when the property was reconveyed to the husband for the purpose of being conveyed to the Lunts in exchange for the farm deeded on the same day and as part of the same transaction to the defendant, and upon which the plaintiffs levied as being the property of the husband.

Now we think neither of these claims is sustained by the evidence.   The first is founded upon Darwin Dwelley's answer that at the time of the conveyance to his wife he " was in a slim state of health," and the next succeeding question and answer, viz : "Whether or not it was your purpose that she should have the whole of it in case of your death at that time " ?  "Yes, to do as she pleased with it."

There is nothing singular in the witness assenting to the purpose attributed to him by counsel in the question, for he had

already testified touching the consideration of the deed to his wife—"I considered she had worked as hard through life as I had, and was as much deserving to be looked out for as myself, and I *gave* it to her;" but it does not go far to convert an absolute completed conveyance into one conditioned upon his speedy dissolution. So far as appears, he thought, whether he lived or died, his "wife deserved to be looked out for as much as himself," and hence made the conveyance which gave her the right "to do as she pleased with it" in either case.

Nor, except to creditors desirous of securing a desperate debt, does the testimony indicate a revocation of the gift to the wife by mutual consent. That the aged husband and wife should have the same wishes with regard to the disposition of the property in such a way as would finally transfer it to their son, the defendant upon whom they relied for the support of both, proves nothing. The whole arrangement for the exchange with the Lunts to this end was complete before the transfer of either parcel was made, and all the conveyances of May 17, 1877 were parts of that one transaction, which was in substance the conveyance from the Lunts to the defendant of the farm here in controversy in exchange for property which at that time belonged not to the defendant's father but to his mother. There was nothing there over which Darwin Dwelley at that time had any dominion or control. That he should appear as a nominal party through whom the conveyances were made does not indicate any fraudulent intent as to his creditors, but rather the reverse.

It suffices here to say that years before his indebtment to the plaintiff accrued, he had parted in good faith with all property in the estate, for which this farm was received in exchange; and the only title to either parcel that he has since held was in trust for the specific purpose of making the conveyances in question.

*Judgment for defendant.*

APPLETON, C. J., WALTON, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.