GARDINER SAVINGS INSTITUTION, in Equity,

*vs.*

DANIEL M. EMERSON, and another.

Kennebec.   Opinion May 27, 1898.

*Interpleader in Equity. Costs. Fraudulent Conveyance. R. S., c. 65, § 36.*

In cases of interpleader, the money should be paid into court, and if an interpleader be awarded, a decree should be made discharging the plaintiff from all liability to either party, and directing the claimants to interplead. Thereby the court takes jurisdiction, and retains the possession and control of the fund, and the plaintiff ceases to be a party to the litigation.

Where the proceedings have been irregular in these respects, it is considered, for this reason, that costs should not be allowed.

A conveyance made with express intent to defraud, hinder or delay creditors is void as to them. A voluntary conveyance from father to son is prima facie fraudulent and void as to existing creditors. Such a conveyance is to be considered not only in the light of all surrounding circumstances, but in the light of necessary consequences. Whether the property conveyed was all that the grantor owned or not, and if not, the amount and value of what remained relative to existing debts, its situation, its availability for the purpose of being got at to be applied to the payment of debts, whether by the conveyance, the creditor is necessarily subjected to a loss of remedy for the collection of all or a part of his debt, or is necessarily hindered or delayed in his ability to collect his debt,—all these circumstances are to be weighed in determining whether the conveyance was fraudulent in intent, or worked out a fraudulent result; and one of these is as fatal as the other. When such a conveyance must necessarily result in defeating, hindering or delaying creditors, as well as when such a result was expressly intended, it is to be regarded as fraudulent and void as to them. The intent to defraud is sufficiently proved.

A non-resident debtor owing a creditor in this state, gave to his son all his property in this state. He died soon after, leaving an estate in California, sufficient to pay the claims of the creditor here. But in California a large part of the claim, at the date of the gift, was barred by the statute of limitations. In this state none of it was barred.

*Held;* that the necessary effect of the gift was to utterly deprive the creditor ' of the ability to recover a large part of his debt, and for the recovery of so much as remained collectible, in spite of the statute of limitations, to remit him to the tribunals of a distant state; and that the gift was void as against creditors in this state, and that the fund should be administered in this state as the estate of a deceased non-resident.

ON APPEAL IN EQUITY.

This was an appeal by the defendant Emerson from the following decree in equity made in the court below:

1.  That the funds in the hands of the Gardiner Savings Institution standing in the name of Jacob Emerson, being the amount stated in deposit book No. 811 as alleged in the bill of complaint, together will all accrued interest thereon, be forthwith paid by said Gardiner Savings Institution to Fred Emery Beane, administrator of the estate of said Jacob Emerson, deceased, duly appointed by the probate court for said county of Kennebec, to be administered upon by said administrator in accordance with the laws of this state, and under the direction of the probate court for said Kennebec county.

2.  That Daniel M. Emerson, of Alma, in the state of California, the other defendant in said bill, together with his servants, agents and attorneys, be and hereby is perpetually enjoined and restrained and prohibited from bringing any action at law, or bill in equity, against said Gardiner Savings Institution to enforce his alleged claim to said fund in the hands of said Gardiner Savings Institutions, and that a writ of injunction issue accordingly from this court.

3.  That said Gardiner Savings Institution have and recover its costs to be taxed by the clerk and reasonable counsel fees, to wit, fifty dollars and deduct the same from the funds in its hands before transferring said fund to said administrator.

4.  That said Fred Emery Beane, administrator, have and

recover his costs in this cause, to be taxed by the clerk, and reasonable counsel fees, to wit, the sum of fifty dollars.

*Geo. W. Heselton*, for Fred Emery Beane, Admr.

*A. M. Spear and W. D. Whitney*, for Danl. M. Emerson.

SITTING: PETERS, C. J., EMERY, HASKELL, STROUT, SAVAGE, JJ.

SAVAGE, J.    Appeal of Daniel M. Emerson from decree on bill of interpleader.    The proceedings in this case appear to have been irregular.    In cases of interpleader, the money should be paid into court, and if an interpleader be awarded, a decree should be made discharging the plaintiff from all liability to either party, and directing the claimants to interplead.    Thereby the court takes jurisdiction, and retains the possession and control of the fund, and the plaintiff ceases to be a party to the litigation.    In this case, the money does not appear to have been paid into court, and there was no decree to interplead.    The cause was heard by the sitting justice upon the bill, answers and proof, the answers being treated as the pleadings of the claimants.    A decree was made upon the merits as between the claimants.    And inasmuch as the case has been fully argued before this court upon the merits, we so far overlook the form of the proceedings, as to inquire whether the decree should be sustained, after the plaintiff, as it may yet do, brings the fund into court.

The facts alleged and admitted or proved are these:   One Jacob Emerson, a resident of California, in his lifetime deposited about fifteen hundred dollars in the plaintiff bank, an institution located at Gardiner in this state.    He came to Maine in 1889, and while here boarded with one John C. Willey from November 14, 1889, until August 6, 1890.    He then returned to California, where he died, testate, June 12, 1892.    At the time of his death, he was indebted to the estate of Mr. Willey for board, care and washing furnished him between the dates named.    No part of that indebtedness has since been paid.    Demand for payment was made upon him by letter three times.    He made no reply to any of these letters.

May 21, 1892, he made his last will and testament, and after making sundry small bequests, he devised the residue, amounting, it is claimed, to eighty thousand dollars to his son Daniel M. Emerson, who is one of the claimants here. June 5, 1892, one week before he died, he executed an assignment in writing of the deposit in the plaintiff bank to the same Daniel M. Emerson, and delivered to him the bank book and assignment. The assignment was without consideration, it was a gift. It is under this assignment that Daniel M. Emerson makes claim to the fund in the Gardiner Savings Institution. It further appears that the will of Jacob Emerson was admitted to probate in California, and letters of administration issued to Daniel M. Emerson, executor, August 5, 1892. The executor gave notice of his appointment, August 6, 1892, and all creditors were required to present their claims to him within four months from that time. The claim of the estate of John C. Willey was not presented. Ancillary administration on the estate of Jacob Emerson, in the interest of the Willey estate, was taken out in this state, in June, 1893, and the defendant Fred Emery Beane was appointed administrator with the will annexed. Mr. Beane, claims that the assignment of the fund to Daniel M. Emerson was fraudulent and void as to creditors in this state, and that the fund remains a part of the estate of Jacob Emerson, to be administered by him in this state; and here arises the issue between the claimants.

The sitting justice decreed that the fund be paid to claimant Beane as administrator, " to be administered upon by said administrator in accordance with the laws of this state." The other claimant, Emerson, appealed. The decree was not accompanied by a finding of facts, but an examination of the pleadings and proof shows that the justice who made the decree necessarily found as a fact that the assignment was in fraud of creditors, or at least, in fraud of creditors in this state.

Fraud in a matter like this is a question of fact, and not a presumption of law. It must be proved like other facts. *French* v. *Holmes,* 67 Maine, 186; *Weeks* v. *Hill,* 88 Maine, 111. And in equity procedure, the finding of a single justice, expressly made or

necessarily involved, upon a question of fact is not to be reversed upon appeal, unless clearly wrong. *Young* v. *Witham*, 75 Maine, 536; *Paul* v. *Frye*, 80 Maine, 26; *Gilpatrick* v. *Glidden*, 81 Maine, 137; *Jameson* v. *Emerson*, 82 Maine, 359.

We must apply this rule to the case at bar. The appellant must satisfy us that the decree appealed from is clearly wrong, or it will be affirmed.. *Paul* v. *Frye*, supra. We think no error has been shown, and that the facts in the case considered in the light of legal principles are sufficient to support the decree.

It is well settled that a conveyance made with express intent to defraud, hinder or delay creditors is void as to them, and that a voluntary conveyance from father to son is prima facie fraudulent and void as to existing creditors.

In *Lerow* v. *Wilmarth*, 9 Allen, 382, it is said: "The better doctrine seems to us to be that there is, as applicable to voluntary conveyances made on a meritorious consideration, as of blood or affection, no absolute presumption of fraud which entirely disregards the intent and purpose of the conveyance, if the grantor happened to be indebted at the time it was made, but that such a conveyance under such circumstances affords only prima facie or presumptive evidence of fraud, which may be rebutted and controlled." This language was quoted with approval in *French* v. *Holmes*, 67 Maine, 186. See also cases cited in same case.

The conveyance is to be considered not only in the light of all surrounding circumstances, but in the light of necessary consequences. Whether the property conveyed was all that the grantor owned or not, and if not, the amount and value of what remained relative to existing debts, its situation, its availability for the purpose of being got at to be applied to the payment of debts, whether by the conveyance the creditor is necessarily subjected to a loss of remedy for the collection of all or a part of his debt, or is necessarily hindered or delayed in his ability to collect his debt,—all these circumstances are to be weighed, in determining whether the conveyance was fraudulent in intent, or worked out a fraudulent result. And we think one is as fatal as the other.

When such a conveyance must necessarily result in defeating,

hindering or delaying creditors, as well as when such a result was expressly intended, it is to be regarded as fraudulent and void as to them. The intent to defraud is sufficiently proved. In 2 Bigelow on Frauds, 83, the rule in such a case is stated as follows: "Whether the gift in such a case was made in good faith or not, whether the debtor intended to pay his creditors in full or not, whether he expected that his other property or the profits of a prosperous business would enable him to do so or not; in a word, however honest his intentions, the case is within the intent to hinder, delay or defraud, expressed in the statute of Elizabeth. It is only another way of stating the rule, to say that if the necessary effect of the gift is to delay creditors, the intent is sufficiently made out." See *Felker* v. *Chubb*, 90 Mich. 24.

And upon the general question involved here, the language of Peck, J., in *Church* v. *Chapin* 35 Vt. 223, is both instructive and appropriate: "A creditor has no right to impeach a conveyance of his debtor on the ground that it was voluntary, or without sufficient consideration, unless it would operate, if allowed to stand, to his detriment in the collection of his debt. The debtor is bound to reserve property ample for the payment of his debts. Whether the property reserved is what will be deemed ample for this purpose does not depend entirely upon the amount and value, as the real end to be accomplished is, that the deed or conveyance shall not deprive creditors of the means of collecting their debts. Hence the nature and situation of the property is to be regarded, as well as the amount and value, in view of the facilities the creditors have left for the collection of their debts." Mr. Bump in his work on Fraudulent Conveyances, at page 298, says: "The property must be so circumstanced that neither delay nor difficulty, nor expense need be encountered, before it can be made available to creditors. The donor must not only have ample means remaining to discharge all his obligations, but these means must be readily and conveniently accessible to his creditors." We think these doctrines are wholesome.

It only remains necessary for us briefly to apply these principles to the ascertained facts in this case. It is claimed that the testi-

mony shows, and for the purpose of this discussion we may assume, that Jacob Emerson died leaving an estate of about eighty thousand dollars. Whether he owed other debts than the one to the Willey estate does not appear. There is no competent evidence, and the counsel for the appellant in his argument does not claim, that he had any property in this state except the fund in the plaintiff bank. The assignment was a gift of all the debtor's property in this state. If it is valid, the creditor is driven to seek his remedy in California. Here, the creditor's entire claim was collectible. There, it would not have been, for it is admitted that by the statutes of limitation in California "an action upon a contract, obligation or liability, not founded upon an instrument of writing, or founded upon an instrument of writing executed out of the state," is barred there after two years. The Willey claim was accruing from day to day from November 14, 1889, to August 6, 1890, and, therefore, at the time of the assignment, June 5, 1892, a large portion of it was already barred there; none of it was barred here. Taking matters as they stood at that time, the necessary effect of the assignment was to utterly deprive the creditor of the right to recover a large part of his debt; and for the recovery of so much as remained collectible, in spite of the statute of limitations, to remit him to the tribunals of a distant state. There are, indeed, reasons for believing that the assignment was intended to compel the creditor to seek his remedy in California, where much of the claim was already outlawed. Jacob Emerson was a very wealthy man, but he had allowed this bill to remain unpaid nearly two years. He made no response to letters demanding payment. He made a will by which this fund would have gone to the appellant, and within three weeks made a gift of the same property to the same person. In the one case the fund would have been administered here, and creditors in this state protected; in the other case, not. But however this may be, we think the sitting justice would have been well warranted in finding that the gift necessarily operated to defeat, and to hinder or delay creditors in this state. The creditor must thereby lose a portion of his debt, and be put to entirely disproportionate delay and trouble and

expense to collect the small remainder. The fund in question should be administered in this state as the estate of a deceased non-resident, in accordance with the provisions of R. S., c. 65, § 36. Upon payment of the fund into court by the plaintiff, a new decree may be made directing its payment to Fred Emery Beane, administrator of the estate of said Jacob Emerson to be administered upon in accordance with the laws of this state. The former decree was premature.

But no costs should be allowed, or allowances made. There is no authority of law for the allowance of costs or allowances to be paid to either claimant out of the fund.

And in view of the irregularity of these proceedings, we do not think the plaintiff is entitled to costs or allowance out of the fund. For the same reason, the prevailing claimant is not entitled to costs against the other claimant.

> *Decree set aside. Upon payment of fund into court,*
> *new decree to be made in accordance with this opinion.*