P. K. DEDERICK *v.* F. A. WOLFE ET AL.

1. CONDITIONAL SALE.   *Title reserved as security.   Retaking chattel.   Power of sale.   Rescission.*

A hay-press was delivered to defendants, who executed therefor three notes for $150 each, due at one, two, and three years.   In each note it was stipulated that the seller retained title, and might, on default in either payment, retake the press, and that " any amount that may have been paid . . . . shall be considered payment for use of machinery, . . . . and nothing shall constitute a defense or offset, or delay prompt payment of this note in full at maturity."   After payment of two notes, on default as to the third, the seller, seeking to enforce payment, took the press by replevin and sued on the note.   Thereupon, without any express power of sale, the creditor, by an agent, after giving nine days' notice by posters and personally informing the debtors, sold the press at public auction for $25, the creditor becoming the purchaser.   *Held,* that this was not a rescission, and that plaintiff was entitled to judgment for the balance due on the note.

2. SAME.   *Character of contract.   Intent.   Resorting to property as security.   Suit for balance.*

In determining the real character of a contract, the court will look to its purpose rather than the name given it.   Notwithstanding one clause in the instrument, which, taken alone, has that meaning, the seller could not end the contract by taking possession of the property, treating what he had received as payment for *hire.*   Giving effect to the intention of both parties, the transaction was plainly a sale with reservation of title as security for the price, and resorting to the property as means of securing payment did not preclude recovery on the note.

FROM the circuit court of the first district of Hinds county.

HON. J. B. CHRISMAN, Judge.

In 1886, appellant, Dederick, sold and delivered to Wolfe and wife a hay press for the sum of $450, taking their three notes for $150 each, payable at one, two, and three years respectively.   Two of the notes were paid.   Default being made in the payment of the last note, Dederick, in November, 1890, brought an action of replevin to obtain possession of the press, with a view to selling the same as a means of collecting his debt, of which he notified defendants at the time.   Soon after this he brought an action of assumpsit on the note in a justice court.   The press having been

taken in the action of replevin through an agent, he gave nine days' notice by posting, and sold the press at public outcry, when it was bought in by himself for $25. The debtors had personal notice of the time and place of the sale, but they did not attend. They were also notified that plaintiff would look to them for any balance on the note. The amount realized on the sale of the press, less $2.50 expenses of sale, was credited on the note then in suit, and plaintiff recovered judgment for the balance due thereon.

From this judgment an appeal was taken to the circuit court, where a trial was had before the court without a jury, resulting in a judgment in favor of the defendants, from which this appeal is taken.

The following is the note upon which the suit is based :—

"$150.                    JACKSON, MISS. Sept. 15th, 1886.

"On or before the first day of January, 1889, for value received, we promise to pay to P. K. Dederick, or order, at the 1st Nat. Bank in Jackson, Miss., One hundred and fifty dollars, with interest at the rate of 6 per cent per annum until paid, without defalcation or stay of execution. If this note is paid at maturity, a dis. of $25 will be allowed.

"In consideration of this contract for the use of a Relo press 14x18 bale, and if suit is brought to enforce collection, of the foregoing note, we agree to have added . . . attorney's fees. The express condition of the transfer for use of the machinery, as above, is that the title, ownership or possession of the same, does not pass from said P. K. Dederick, until this note and all other notes given in execution of this contract, or in renewal of the same or any part thereof, are paid in full, when all of said notes so given and paid are to collectively, and collectively only, constitute a bill of sale and transfer of title, to the machinery in question, to the payee. It is also an express condition of the aforesaid transfer for use that the said P. K. Dederick, shall have full power to declare this note due, and take possession of said machinery at any time he may deem himself insecure, and any amount that may have been paid in execution of this contract, or on the notes given in execution of the same, shall be considered as payment for use of machinery.

" In consideration and in accordance with the above contract, we hereby accept the above-mentioned machinery on the conditions of said contract, and agree that neither loss by fire, breakage or other failure or damage in connection with the same, or any other cause shall constitute a defense or offset or delay prompt payment of this note in full at maturity, and we hereby waive the benefit of all homestead, exemption, or any other law that now exists or may be hereafter enacted, to prevent or delay the collection of the same. For value received I hereby guarantee the payment of this note at maturity.

F. A. WOLFE.<br>M. F. WOLFE."

*Brame & Alexander,* for appellant.

The effect of the note in suit was to give defendants a right to the property, the legal title being reserved merely as a security. *Duke* v. *Shackleford,* 56 Miss. 552 ; *Burnley* v. *Tufts,* 66 Ib. 48.

Whenever an instrument transferring property is intended as a security for money, it is to be considered a mortgage. 86 Ky. 67 ; 4 Lea (Tenn.), 439.

Here there was an absolute promise to pay the debt. The security was only an *incident* to this. In all such cases the creditor may sue on the debt or resort to the security, or do both. Jones on Chat. Mor. § 758.

Without power of sale or stipulation for possession, the mortgagee of a chattel may recover possession. Ib. § 706.

In the absence of statutory requirements, having obtained possession, he may sell. Ib. § 707.

And, in the absence of any provisions as to the manner of sale, many authorities hold that he can sell at private sale. Certainly there is ample authority to make a public sale after reasonable notice. What is reasonable notice to the mortgagor depends on the facts of each case. He who alleges the insufficiency of such notice must assign a reason. Jones on Chat. Mor. § 708.

If the mortgagee takes possession and asserts title without selling, some authorities hold that he thereby satisfies the debt, provided the property is of sufficient value. Ib. § 773 ; 113 Ind. 98.

Otherwise if the property is resorted to in order to enforce the security.  42 Mich. 19.   Here the property was taken *for the express purpose of being sold to satisfy, as far as possible, the note.* No matter what it brought, defendants owed the debt.   *Straub* v. *Screven,* 19 S. C. 446.

This note represented the last installment.   Defendants had used the press over three years, and this itself was sufficient consideration for all the notes.

In *Ketchum* v. *Brennan,* 53 Miss. 596, it was held in a case like this that the seller in taking the property *rescinded* the contract. But this was overruled in *Duke* v. *Shackleford,* 56 Miss. 552, where it was said : "In reclaiming his property, therefore, the seller is not rescinding the contract, but is *enforcing* it." This statement is entirely applicable here.

In all these cases, the court will look through the *form* to the real transaction.   No matter how the contract is worded, if there is a *debt* and the title is reserved as a *security,* the rights of the parties will be enforced accordingly.   3 Am. & Eng. Enc. L. 446, and authorities there cited.   The purchaser can hold the property on paying the debt, despite the seller ; and the seller is entitled to look both to the property and the personal responsibility of his debtor. He does not release the debt by trying to enforce it as against the security.

The authorities cited by opposite counsel do not militate against our position.   We are not seeking to enforce inconsistent remedies. *Bailey* v. *Hervey,* 135 Mass. 172, is an authority in our favor.

*E. E. Baldwin,* for appellees.

1. This is simply a case of a conditional sale disguised as a lease, and is to be treated as such.   *Hervey* v. *Locomotive Works,* 93 U. S. 664.

In such cases the vendor has a choice of two remedies. - He may sue for the remainder of the price or retake the goods by replevin ; he cannot do both.   By the first method he affirms the sale ; by the latter, he rescinds it.   *Bailey* v. *Hervey,* 135 Mass. 172, is especially to the point.   See also 5 Met. 49 ; 1 Gray, 434.

2. If the agreement is taken literally, the whole remedy of the vendor is set out in the stipulation that in case of default, the payments previously made should be considered as payments for the *use* of the press. The only consideration moving to the vendees would be the use of the property. The vendor having re-taken it by replevin, his remedy was exhausted.

3. The appellant, however, seeks to treat the agreement as a mortgage, which he has foreclosed by taking possession of the property, putting it up at auction, buying it in at his own sale, crediting the bid and suing for the balance. This, we have seen, cannot be, and such a method of procedure no court would tolerate.

4. Under § 1299, code 1880, the writing, absolute on its face, cannot be shown to be a mortgage. There is no statute similar to this in those states where it is held that such instruments may be shown to be mortgages.

CAMPBELL, J., delivered the opinion of the court.

By the writing sued on the makers obligated themselves to pay the sum stipulated, *absolutely and at all events*, and were to have the possession and use of the article named until full payment of the price, or until deprived of it by the act of Dederick for his own security, the title remaining in him until full payment of the agreed price, and any payment made before resumption of possession should be considered as payment for use, but nothing " shall constitute a defense or offset or delay prompt payment of this note in full at maturity." The manifest purpose of the parties was to secure the press to the buyer, and the stipulated price to the seller, and hence the transfer for use of the press, and the retention of title in the seller until paid for. The transaction was plainly a sale, with reservation of title as security for the price, and resorting to the press as means of securing payment of the note was in pursuance of the contract, and did not preclude a recovery on the note, which by its terms and the superadded stipulation was to be paid at all events, and without defense. The case of *Bailey* v. *Hervey*, 135 Mass. 172, relied on by counsel for the appellees, rests on the

assumption that the seller was not entitled to the goods sold and full pay for them, and as he had seized the things sold and *converted them to his own use*, he had made an election between inconsistent things, and was bound by this election.  In the .case before us the seller merely resorted to the thing sold to make it available as a security for the note due and unpaid.  He did not claim the right to the press and the money too, but to make what he could by a sale of the press at a public outcry after due notice, and hold the makers of the contract to pay the balance.  Dederick did not by his course elect to abandon his right to recover on the promise to pay, nor did he do anything inconsistent with a claim for the performance of that promise.  The title was retained by the seller for the very purpose of being made available to the payment of the money promised, and it would be a strange result if the exercise of this undoubted right by the seller as stipulated for by the buyer, should preclude a recovery on the promise which by its terms was to admit of no defense.  It is true, it was stipulated that any payment made should be considered as " payment for use," but it was also stipulated that no " cause shall constitute a defense" of the promise to pay the money; and the proposition that Dederick, by taking possession of the press to make it available as security, surrendered or abandoned or lost his right to go for the money still due is not maintainable.  It rests on the view that the contract was really a mere hiring for use, and that the seller could end it by taking possession of the press, at any time, and treat any payment he had received as hire or rent, and this view would be maintainable, if regard be had to a single stipulation of the contract, but " in determining the real character of a contract courts will always look to its purpose rather than to the name given to it by the parties." *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 664, and see *Heryford* v. *Davis*, 102 Ib. 235, in which latter case the court dealt with a contract substantially like the one before us, and took the same view of its effect as we do of this.

The cases supporting our view are numerous.  Many are referred to in 3 Amer. & Eng. Enc. Law, 426.  Our own are decisive in

its favor.  *Duke* v. *Shackleford,* 56 Miss. 552 ; *Burnley* v. *Tufts,* 66 Ib. 48.

It would be a most unreasonable interpretation of the contract to hold that Dederick's taking possession of the press was an abandonment of his claim to be paid what had been promised and not paid.  There is no express provision to that effect, and to give such effect to Dederick's act is to cause a forfeiture of his right to be paid in full, at all events, as promised by the buyer, while the other view does justice to both parties, according to their contract, by allowing the seller what he was promised and the buyer what was purchased, and treating the press as it was intended to be, as a security for the payment of the stipulated price.

*Reversed and remanded for a new trial.*