Sullivan, }
April 7, 1903. }

## CUTTING *v.* WHITTEMORE.

Where notes signed by conditional vendees and secured by a lien upon the property sold are taken up, and individual notes of one of the original promisors are given in place thereof, the transaction will not work a novation unless the new notes are accepted upon the understanding that they are to be substituted for the prior obligations and shall operate to extinguish the lien debt; and the question whether there was such an agreement is one of fact, the burden of proof resting upon the party who seeks to establish the novation.

A vendor who reserves title to personalty until the purchase price is paid retains the general property therein as collateral security; and his assignee has the right to retake the chattels upon the failure of the conditional vendee, or those representing his interest, to pay the lien debt as agreed.

Where personal property is sold to satisfy the lien of a conditional vendor, the vendee, or one having his interest, is entitled to receive the proceeds, after deducting the amount due on the lien debt and the reasonable expenses incident to the sale.

A conditional vendee of chattels, while in possession thereof under the contract of sale, has an interest in the property which he may mortgage.

An agreement for arbitration contemplates a submission of existing claims and not those which the parties may thereafter acquire.

TROVER, for a steam sawmill. Trial by the court. Transferred from the November term, 1902, of the superior court by *Peaslee*, J.

July 23, 1892, the Forsaith Machine Company sold to F. P. Nutting and his brother the property in question, upon the understanding that the title should not pass until the purchase price was paid. A memorandum witnessing the condition of the sale was duly executed and recorded, and lien notes representing the purchase price were taken. The brother soon retired from the business, and F. P. Nutting thereafter conducted it. He took up the lien notes from time to time, and gave new notes for the balances due and for supplies furnished him; but it is found that the Machine Company did not intend to transfer the title to him by these transactions.

June 1, 1896, Supply Barney took a mortgage upon the property from Nutting. September 17, 1896, the defendant bought the claim of the Machine Company, took possession of the property the following March, and in June sold it at auction for $836.64. June 29, 1897, Chellis and the defendant, each claiming an interest in the property in suit by virtue of mortgages given by Nut-

ting, agreed to a reference for the purpose of settling their differences. A hearing was had, a report made, and judgment rendered thereon. The referee found that as between the parties all their mortgages were paid, and did not pass upon the validity of the Machine Company lien. May 4, 1898, Chellis bought the Barney note and mortgage, transferred them to the plaintiff for a nominal consideration, and brought this suit. The defendant had a verdict, and the questions herein presented arise upon the plaintiff's exception thereto.

*Burt Chellis* and *Hermon Holt*, for the plaintiff.

*Oliver E. Branch*, for the defendant.

Bingham, J. 1. As Chellis is the plaintiff in interest, the rights of the parties will be considered and determined as though the suit was brought in his name. Whatever right he has to maintain this action arises out of his ownership of the Barney note and mortgage. He contends that the title to the property passed to Nutting when he gave the Machine Company his individual notes and received from them the lien notes; that the conduct of the parties worked a novation—a substitution of a new contract for the lien claim.

It has been said that to create a novation, " there must be present . . . all the necessary elements of a legal contract. There must be parties capable of contracting, a valid prior obligation to be displaced, the consent of all parties to the substitution, based upon sufficient consideration, resulting in the extinction of the old obligation and the creation of a valid new one. And all these must be established by legal and sufficient evidence." 21 Am. & Eng. Enc. Law (2d ed.) 663. And such is the law of this state. *Butterfield* v. *Hartshorn*, 7 N. H. 345; *Heaton* v. *Angier*, 7 N. H. 397; *Warren* v. *Batchelder*, 16 N. H. 580; *Clark* v. *Draper*, 19 N. H. 419; *Woodward* v. *Miles*, 24 N. H. 289, 294; *Coburn* v. *Odell*, 30 N. H. 540, 557; *Morse* v. *Allen*, 44 N. H. 33; *Moore* v. *Fitz*, 59 N. H. 572; *Woodward* v. *Holmes*, 67 N. H. 494; 22 Am. & Eng. Enc. Law (2d ed.) 555, 556.

In *Woodward* v. *Miles*, *supra*, the proposition is stated as follows: " There is no presumption of law, that where parties make a new contract, . . . [they] agree to accept the new contract in discharge of the old. The party who alleges such agreement for the discharge of the old debt is bound to prove a distinct agreement to that effect."

Whether such an agreement was made in a given case, is a question of fact. *Wilson* v. *Hanson*, 20 N. H. 375; *Foster* v. *Hill*, 36 N. H. 526. It may be proved " either by direct evidence, or by

proof of facts which show that it must have been made." *Warren* v. *Batchelder*, 15 N. H. 129, 136; *S. C.*, 16 N. H. 580, 587, 588; *Randlet* v. *Herren*, 20 N. H. 102; 21 Am. & Eng. Enc. Law (2d ed.) 669. And the burden of proof is upon the party seeking to establish the novation. *Foster* v. *Hill, supra; Randlet* v. *Herren, supra.* Where a new note is given, signed by a part only of the original obligors, it is still a question of fact whether the new note was taken as a substitute for and in extinguishment of the original debt or obligation. *Johnson* v. *Cleaves*, 15 N. H. 332; *Smith* v. *Smith*, 27 N. H. 244; *Thompson* v. *Briggs*, 28 N. H. 40. And the same holds true where the new note is that of a third party. *Randlet* v. *Herren, supra; Wilson* v. *Hanson*, 20 N. H. 375; *Whitcher* v. *Dexter*, 61 N. H. 91.

Therefore, in order to sustain the plaintiff's contention, it must appear that the Machine Company received the Nutting notes upon the understanding that they were to be substituted for and to extinguish the original lien debt. But this fact is not found. On the contrary, the finding is that the Machine Company did not intend to transfer their title in the property to Nutting; and the general verdict for the defendant embodies a finding that the Machine Company, when they received the Nutting notes, did not assent to an extinguishment of the lien debt, and that no novation took place. And it cannot be said as a matter of law that the trial judge was not warranted in finding this fact as he did. The evidence was conflicting on this question. While the findings of facts—wherein it appears that Nutting gave his notes to the Machine Company for supplies furnished him from time to time and for balances due on the lien debt, and received in exchange the original notes—were evidence in support of the plaintiff's contention, yet the fact that the original debt was secured by a lien upon the property was strong evidence tending to show that the Machine Company did not intend to receive Nutting's individual notes as payment of that debt and in extinguishment of their security. *Sweet* v. *James*, 2 R. I. 270; *Wheeler* v. *Shroeder*, 4 R. I. 383; *Hopkins* v. *Detwiler*, 25 W. Va. 734; 22 Am. & Eng. Enc. Law (2d ed.) 553.

The conclusion on this branch of the case is, that the Nutting notes were received and held by the Machine Company as collateral to, or as conditional payment of, the lien debt; and not having been paid at the time of the sale of the property by the defendant, the lien claim was not discharged, and the title and right to the possession of the property was in the Machine Company, or the party owning their interest. *Wilson* v. *Hanson, supra; New Hampshire Bank* v. *Willard*, 10 N. H. 210, 213; *Wright* v. *Buck*, 62 N. H. 656; 21 Am. & Eng. Enc. Law (2d ed.) 672.

2. It has been decided in this state that a vendor who sells a chattel, reserving the title until the purchase price is paid, retains the general property therein, not as the absolute owner, "but as collateral security, not differing materially from security by way of mortgage or other lien"; and that a transfer of the debt carries with it, as an incident, his interest in the chattel, in the same manner as the assignment of a mortgage debt would carry with it the mortgage. *Esty* v. *Graham,* 46 N. H. 169, 170; *Rigney* v. *Lovejoy,* 13 N. H. 247. And this is the view accepted by courts in other jurisdictions. *Ross-Meehan Co.* v. *Ice Co.,* 72 Miss. 608,— 18 So. Rep. 364; *McPherson* v. *Lumber Co.,* 70 Miss. 649,—12 So. Rep. 857. In the first of these cases the vendor's interest is thus defined: "The reservation of the title is but as security for the purchase price; and if the property is recovered by the seller, he must deal with it as security, and with reference to the equitable rights of the purchaser. . . . Being but a security for the payment of money, the benefit thereof follows the debt when assigned, as an incident thereof." Such an interpretation of the contract gives effect to the intention of the parties; the very purpose of the retention of the title being to make the property available for the payment of the purchase price.

Applying the principle of these cases to the one now before us, the legal title to the property passed to the defendant when he purchased the lien claim of the Machine Company; and he had the right to retake the property upon the failure of Nutting, or those representing his interest, to pay the balance of the lien debt as agreed. *Proctor* v. *Tilton,* 65 N. H. 3.

3. But it appears that the conditional vendee has reduced the lien debt by making payments, and that the sum realized by the defendant from the sale of the property exceeds the sum due upon that debt by about $220. It therefore remains to be considered what rights the conditional vendee, or those representing his interest, have in this sum, the property having been sold for condition broken.

This question has never been considered by this court; but inasmuch as the vendee's interest is of an equitable nature, it would seem that his rights in the property, or its proceeds, would be recognized and protected in a court of equity, especially in jurisdictions that regard the retention of the title as collateral security to the payment of the purchase price. *Esty* v. *Graham, supra; Leach* v. *Kimball,* 34 N. H. 558, 574; *Ross-Meehan Co.* v. *Ice Co., supra; McPherson* v. *Lumber Co., supra; Dederick* v. *Wolfe,* 68 Miss. 500; *Puffer Mfg. Co.* v. *Lucas,* 112 N. C. 377; *Tufts* v. *Stone,* 70 Miss. 54; Mech. Sales, s. 630.

But if the interest of a vendor in chattels, created by a reserva-

tion of title, is a lien within the meaning of sections 3, 4, 5, 6, and 7, chapter 141, of the Public Statutes, then the rights of the conditional vendee, both in the property and its proceeds, are recognized and protected at law, even after condition broken. It has been held under the provisions of sections 17 and 18, chapter 220, of the Public Statutes, making personal property incumbered by mortgage, pledge, or lien liable to attachment "as the property of the mortgagor, pledgor, or general owner," that the interest of a conditional vendee may be attached and held by his creditors. *Fife* v. *Ford*, 67 N. H. 539. And we are of the opinion that the interest of a conditional vendor is a lien within the meaning of the provisions of chapter 141; and that Nutting, or the person having his interest, is entitled to receive from the defendant the balance of the proceeds of the sale, after deducting the amount due on the lien debt and the reasonable expenses incident to the sale, he having taken possession of the property and sold it for a sum exceeding his lien thereon.

The defendant, however, contends that the conditional vendee had no interest in the property which he could mortgage or assign, and that the plaintiff, or Chellis, acquired no interest therein by the purchase of the Barney mortgage. But it has been held that the conditional vendee, while in possession under the contract of sale, has an interest in the property that he may give away (*Hatch* v. *Lamos*, 65 N. H. 1); that he may sell (*Bailey* v. *Colby*, 34 N. H. 29; *Nutting* v. *Nutting*, 63 N. H. 221); that he may mortgage (*Chase* v. *Ingalls*, 122 Mass. 381; 1 Mech. Sales, s. 588); that his creditors may attach (*Hervey* v. *Dimond*, 67 N. H. 342; *Fife* v. *Ford*, 67 N. H. 539; *Bingham* v. *Vandergrift*, 93 Ala. 283); that it will pass to his assignee in insolvency (*Adams* v. *Lee*, 64 N. H. 421); and that a performance of the condition of the sale after a transfer of the vendee's interest, either by the vendee or his assignee, will vest the title in the assignee without further action by the vendor. *Hatch* v. *Lamos*, *supra*. It follows, therefore, that by the purchase of the Barney mortgage Chellis acquired the interest of Nutting.

4. Chellis did not own the Barney mortgage when the arbitration agreement was made, and that agreement did not contemplate a submission of claims which the parties might thereafter acquire. *Thrasher* v. *Haynes*, 2 N. H. 429; *Adams* v. *Adams*, 8 N. H. 82, 91; 2 Am. & Eng. Enc. Law (2d ed.) 610.

5. It appears that the validity of the lien claim was not considered by the referee; but as he found that the only claim the plaintiff presented was invalid, that ended the controversy.

6. Chellis is not seeking to enforce this claim against Barney, and the defendant has money that belongs to the person owning

the Nutting interest. It is therefore not a defence of which the defendant can avail himself, that when Chellis bought the note and mortgage he received from Barney a release, wherein he stipulated that he would refrain from instituting criminal prosecutions against Nutting for having placed mortgages upon the property without specifying the existence of prior mortgages.

If the plaintiff procures an amendment in the superior court, he may have judgment against the defendant for the amount received from the sale of the property, less the balance then due on the lien debt and the reasonable expenses of the sale ; otherwise there will be judgment for the defendant, and the plaintiff can proceed anew if he desires.

*Case discharged.*

CHASE, J., was not present at the argument and took no part in the decision: the others concurred.