Hillsborough, }
May 7, 1929. }

CLARA MERCIER *v.* NASHUA BUICK CO.

MANCHESTER BUICK CO. (trading as NASHUA BUICK CO.)
*v.* CLARA MERCIER.

*Hamblett & Hamblett* (*Mr. Robert B. Hamblett* orally), for the plaintiff.

*Frederick J. Gaffney*, for the defendant.

ALLEN, J.   No exceptions having been taken in the action of trover, it is treated as though it had not been transferred.

The findings that the defendant's son was the purchaser of the trucks and that the defendant only guaranteed his payment of the price are in violation of the parol evidence rule. The contracts of sale were in writing and by their terms she bought the trucks. There is no issue that the contracts were not validly made, and no claim that they are illegal by reason of fraud or should be reformed by reason of mistake is made. Her understanding of their legal effect is therefore immaterial, even although the plaintiff gave her such understanding.

If, however, the plaintiff's exception to "such findings and rulings of law as are adverse to its claims" is too broad to bring the findings into question (*Gardner* v. *Company*, 79 N. H. 452), it does not affect the result. Whether the defendant bought the trucks or merely guaranteed her son's liability to pay for them, the plaintiff did nothing which discharged her liability as a guarantor unless it also discharged her liability as a purchaser.

If the sales were made to the defendant's son, no change in the terms of the contracts for them was made by agreement with him, and the defendant's position as a guarantor in her rights against her son or to be subrogated to the plaintiff's rights against him has been subjected to no impairment. The liquidation of other security held by the plaintiff for the son's debts and the application of its proceeds towards the debts did not weaken the defendant's rights as a guarantor, but on the contrary reduced the amount of her liability. "It is the

duty of a creditor who has an obligation executed by principal and surety, and who has also taken collateral security from the principal, to appropriate the avails of that security to the payment of the debt, or to hold it for the benefit of the surety, who, if he pay the debt, will be subrogated to the rights of the creditor." *Watriss* v. *Pierce*, 32 N. H. 560, 573. The question here is not of the right to thus appropriate the security, but whether the right has been exercised in a proper manner. It follows that if the defendant was a guarantor, she has been discharged from liability only to the extent her son has been discharged.

The question whether a vendor under a conditional sale who repossesses the property must sell it at auction in the manner prescribed by P. L., *c.* 217, *ss.* 5-10, in order to retain his claim against the purchaser for the unpaid part of the price, is presented. While it has been held that the interest of a conditional vendor is a lien within the meaning of the chapter (*Cutting* v. *Whittemore*, 72 N. H. 107, 111), no decision determining the effect of failure to enforce the lien according to its terms upon further liability of the vendee is found.

By the weight of authority repossession and suit against the buyer for the unpaid price are inconsistent remedies, and election of one bars the other. 24 R. C. L., Sales, *s.* 785; 35 Cyc. 696; Williston, Sales, *s.* 579; 23 L. R. A. (N. s.) 144 *n.*; L. R. A. 1916 A, 915 *n.*; cases cited in the foregoing. It is manifest that the rule produces hardship and unfairness. The conditional sale contract calls for full payment of the price to the seller and contemplates that the risk of loss shall fall on the buyer. When the buyer's credit and solvency are limited and in his possession of the property it is so lessened in value as to be inadequate security for the unpaid part of the price, an alternative choice of remedies may give the seller only a part of the full compensation for liability which is the general policy and principle of the law, while concurrence of the remedies may give such compensation. If the buyer defaults and receives credit for the fair value of the property at the time it is repossessed, there is no injustice to him in holding him personally liable for the balance. His agreement is to pay the full price, the seller receives no more than that, and any loss is properly the buyer's. The reasoning and merits of the rule of alternative rather than mutual remedies in such cases are therefore to be examined in the determination of its standing as here in force.

The inconsistency of the remedies by suit for the unpaid price and by repossession is usually held to lie in the acknowledgment of the buyer's title in bringing suit for the unpaid price so as to bar repos-

session and in a rescission or avoidance of the sale by repossession so as to bar such suit. The argument seems to be that the buyer may say that if he is to be held on his personal liability, the property must be regarded as his, and if the property is taken away from him, it cancels the sale and sets aside performance of the contract by the seller, thus releasing the buyer from performance.

The argument overlooks the buyer's breach of the contract as the real abrogation. By his breach he abandons his right to become the owner of the property and loses his right of possession. He has no title and his conduct takes away his right to keep the property. It is his own act of fault which deprives him of all interest in the property. The seller, having at all times had title, thereby also has the right of possession. His repossession is the exercise of a remedial right only to the extent of the value of the property, and he takes only what belongs to him. How it operates as an avoidance of the contract of sale by the seller is not perceived. On the contrary, the contract contemplates a double remedy. The buyer is to pay the price at all events, and if he repudiates the contract so as to lose the property, it does not affect his obligation to pay for it. He has received all he bargained for. He was to have title only by payment and his refusal to pay meant the loss of his right to title. But it should not mean that the seller in acting on the situation the buyer through his own default has created, should thereby be barred from enforcing the buyer's promise to pay. As it is the buyer's and not the seller's fault that the buyer may not have the property, he is not fairly to be allowed to take advantage of his wrong and avoid liability on his promise.

The right to payment of the price and the right to repossession if payment is not made both rise from the contract. The buyer has no right to refuse payment, and the right of repossession his refusal gives the seller is not a substitutive right for the right to payment. So far as it means the buyer's loss of the right to title, he has brought it on himself. Exercise of the right of possession is therefore not inharmonious with a claim for the price remaining unpaid. While equitable principles will bar the seller from the pursuit of more remedial action than gives satisfaction of the buyer's obligation, on the other hand the law should be adequate to give remedies to the extent of satisfaction. Resort to repossession and suit for the price should not bar each other, and the remedies may well and properly be concurrent to the point of satisfaction.

It accordingly follows that repossession is not inconsistent with the exercise of a claim for the unpaid price against the buyer person-

ally. While the seller may receive no more than satisfaction, and hence must give credit for the value of the property repossessed, or be ready to return the property when the full price is paid, the different remedies are not in conflict and incompatible for that reason. The question is whether one remedy rests on some principle which denies support of the other. *Gehlen* v. *Patterson*, 83 N. H. 328, 330, 331. And such is not the situation here.

In the absence of statute regulating the disposal of repossessed property, the vendor's rights at law to the property are absolute. But on the principle of relief against forfeiture equity does not treat the vendee's default as an abandonment of his right to receive title. It gives him an equity of redemption unless there is an abandonment in fact. The equity of redemption in the case of chattel mortgages when there is no statutory right of redemption (*Leach* v. *Kimball*, 34 N. H. 568) is given similarly for conditional sales. *Cutting* v. *Whittemore*, 72 N. H. 107, 110.

But the non-statutory equity of redemption entitles the vendee to the property on payment of whatever is due on the price only while the property remains in the possession of the vendor or of one having his knowledge. Having legal title and possession, the vendor gives title on a sale, and as between a purchaser without notice and the vendee, the equities of the purchaser are superior and prevail. The statute providing for the manner of execution of conditional sale agreements and recording them (P. L., *c.* 216, *ss.* 27–30) is not designed to protect the vendee but only his creditors and purchasers from him, and is intended to apply to his possession and not the vendor's.

The vendee, however, if the vendor has disposed of the property, is entitled to an accounting. *Cutting* v. *Whittemore, supra.* The vendor must give credit for the value of the property or for whatever he receives for it, whichever is greater, and for any other proper elements of damage sustained by the vendee. That being done, the vendee is entitled to any balance after the credit is applied over and above his own debt. But if the credit does not equal the debt, to relieve the buyer from liability therefor would be to give the vendor's wrong in improperly destroying the vendee's equity of redemption a penalizing result and establish a rule of damages other than compensation.

If A sells B goods on credit and A after B's receipt of them injures, or deprives B of them, B's debt for the price remains unaffected. A is liable for the wrong he does, but the sale is not thereby vacated and liability for the wrong gives B no release from liability for the price. In its structure and contemplation a conditional sale is no

different from any other completed sale. The property sold remains security for the debt, but the transaction of sale itself is a concluded one. The agreement divides itself into two separate parts, one of a fully effected sale and one of provision for securing payment. In this respect it is in full analogy with a sale in which the price is secured by a mortgage of the property sold. *Cutting* v. *Whittemore, supra.*

As already stated, *Cutting* v. *Whittemore* holds the legislation relating to sales of personal property subject to lien against the owner of the legal title to be inclusive of conditional sales. As to such sales the effect of this legislation is only to establish a legal right of redemption in place of the equitable one and to provide a defined legal method for its foreclosure. The analogy of the statutory chattel mortgage foreclosure parallels it. In discussing such foreclosure, it is said in *Leach* v. *Kimball*, 34 N. H. 568, at *p.* 574:

"The only object of this public sale was to foreclose the old equity of redemption and the new statutory right of redemption of the mortgager, and those claiming under him. But this foreclosure is not necessary to give to the mortgagee, or his assignee, all the rights of an absolute owner in every other respect, except that the property remains liable to be redeemed. 16 Barb. 50; 12 Wend. 63.

"The statute converts the equitable right of the mortgager to redeem into a legal right, and of course gives to the mortgager a remedy at law, instead of in equity, for an infringement of his rights; but such remedy must be sought agreeably to the ordinary rules affecting other actions at law."

The statute for conditional sale foreclosures only prescribes the one rightful way in which the vendee's equity of redemption may be barred. It does not undertake to deal with a wrongful deprivation or destruction of it. If the vendor carelessly destroys the property or wrongfully disposes of it, he is liable for damages on ordinary theories of compensating injury, and the statute carries no implication of release of the vendee for what he owes. Wrongful dealing with the security under no reasonable theory of the law can operate to discharge a just debt.

It follows that the plaintiff may hold the defendant for the unpaid price of the repossessed truck which it resold, giving credit for its value or for what it received for it in accordance with the rule already stated. And the vendor's expense in repairing the truck is to be given allowance for its bearing in determining its value or the net proceeds of the sale.

As to the other truck, the agreement for its sale amounted to a

conditional sale. It was valid between the parties. *Adams* v. *Lee,* 64 N. H. 421. While it contained no express clause for repossession, the plaintiff had the right of repossession upon a default. *Proctor* v. *Tilton,* 65 N. H. 3. The plaintiff exercised the right and has since kept the truck. The defendant has made no attempt to redeem it. In this situation she remains liable for the balance due on its price.

*Exceptions sustained.*

All concurred.