Rockingham, }
March 1, 1932. }

LENA J. MOORE *v.* THEODORE ROXBURY.

*William H. Sleeper* and *John W. Perkins,* for the plaintiff.

*Sewall & Waldron,* for the defendant.

ALLEN, J.  The declaration stated a cause of action.  It alleged a pretended bestowal upon the plaintiff of valuable rights, and a procurement from her of a deed of her property by means of the pretense.

The evidence tended to support the claim.  The plaintiff testified that the deed was signed by her in the belief that it was a document relating to her support and that the defendant's false statements induced her belief.  She also testified that the release was obtained by the defendant's fraud in leading her to believe that it related to another matter.

Acceptance of the testimony results in the legal situation of a record of her property in the defendant's name without her consent.  She gave neither deed nor release.

Argument may be made that in a strict sense the plaintiff was not defrauded because she parted with nothing, and that at most there was a cloud on her title subject to removal.  By the argument, the distinction between conduct and the reasons for conduct is to be noted.  If one is led to take action in the belief induced by fraud that it is different action, in reality no action is taken.  The thing intended to be done is not done because it takes the form of something else, and the thing appearing to be done is not done because there is no intention to do it.  But if one is led to take intentional action for reasons induced by fraud, the act is his because it is intentionally performed.  The fraud is ground for redress, but the thing done stands until undone.  3 Williston, Cont., s. 1488.

The void character of an apparent act chargeable to fraud has been established and recognized in the law since *Thoroughgood's Case,* 1 Co. Rep. Pt. II, 9b.  "That the defendant cannot be held by virtue of any actual contract or promise is very clear, because he never made any contract; . . ."  *Citizens' &c. Bank* v. *Smith,* 55 N. H. 593, 601. While the injured party's negligence in being defrauded estops him from pleading the fraud as to innocent third parties (*Citizens' &c. Bank* v. *Smith, supra; Thompson* v. *Ela,* 58 N. H. 490), his carelessness does not excuse the party committing the fraud.  *Wright* v. *Noyes,* 80 N. H. 172, 174, and cases cited.

The answer to the argument that there is no loss when the fraud induces unintended conduct is that the nullity of an unintended but apparent act may be waived by the injured party without waiving the fraud.  He has the option of remedial right either to have his ap-

parent act annulled or to let it stand as effective and be compensated for his loss in so doing. The defendant is estopped from asserting a position inconsistent with the apparent action his fraud has induced.

It follows that the plaintiff here had the right to elect between suing for damages for the loss of her property and seeking restoration of her record title. But she could not have both remedies. If her record title was restored, her injury was cured. Equity, having jurisdiction of the suit for restoration, would award any incidental damage to which she might be entitled in addition to the restoration. If she sought damages by action at law for the loss of the property, then her right to have her title restored was necessarily waived. Either restoration of the property with allowance for incidental damage or its value measured full compensation for the injury. To grant both would violate the rule of policy against civil penalties.

What the plaintiff had in mind and planned by the proceedings she has brought is not clear. But it is fairly clear that more is sought than an alternative remedy for the fraud. The action for deceit and the bill in equity were brought at the same time. While the bill seeks to have the property held to satisfy any judgment for the plaintiff in the action, it also seeks other just relief. It not only alleges a nominal title in a third person, but it also sets forth the defendant's fraud in procuring the deed as well as the plaintiff's mental incompetency to do any business when it was procured. These averments of fraud and incompetency were unnecessary to support the purpose of the bill to have the property held as though it were attached in the action, and indicate a further purpose of the bill to seek restoration of the property by reason of the invalidity of the deed.

The declaration in the action, after alleging a pretended agreement and purpose of the defendant to support the plaintiff while she lived as the false means by which the deed was obtained, refers to damages as "much loss, special damage by reason of anxiety, fear and mental worry." Regarded in connection with the bill, it is open to the construction of seeking damages, not directly for the loss of the property, but for incidental damage only. Parenthetically, how far incidental damage of such a character may be given allowance as a consequence of fraud does not now invite consideration.

In his opening statement plaintiff's counsel claimed as damages the value of the property at the time of the deed, less payments towards her support. Taken by itself, the statement indicated an election of general compensation instead of restoration. But after the order

of nonsuit, the offer to convey the plaintiff's interest in the property to the defendant if the issues of fraud were submitted to the jury implied an unwaived claim of restoration.

The plaintiff's testimony tended to show a position that she had given neither deed nor release, so that the property remained hers, but yet was entitled to damages for the failure of the defendant's pretended agreement to support her.

It is unnecessary to determine what remedial procedure was planned. It is sufficient to hold that the plaintiff has not clearly and definitely elected between a remedy at law and one in equity. She must make the election before she is entitled to proceed further with the litigation. The order of nonsuit was error. But the plaintiff had no right to a trial of the action as long as she claimed any rights in the property beyond its subjection to execution for any judgment she might obtain in the action. Since election remained doubtful, there was a mistrial, and the court's action in taking the case from the jury was proper, if the order therefor was not the right one.

The plaintiff has averred in the bill her mental incompetency to transact business when the deed was procured from her. Her testimony at the trial lends support to the averment and has much tendency to show that her condition had not then improved. If in the progress of the trial it came to the court's notice that her responsibility for bringing and maintaining the litigation was doubtful, the course to take was to suspend the trial and make inquiry which would determine the doubt. The court's duty to appoint a *guardian ad litem* whenever necessary (P. L., c. 289, s. 1) may arise during litigation or trial as well as at their outset, and may be exercised on its own motion. The orderly course of justice demands that a party apparently irresponsible should not maintain litigation in his own name. The rights of the adversary as well as his own rights are affected, since a verdict or judgment in favor of the adversary may be set aside by reason of the irresponsibility. A judgment against an incompetent defendant appearing in the suit personally or by attorney may be vacated (*Lamprey* v. *Nudd*, 29 N. H. 299), and the reasons for it would seem as forceful when the incompetent is a plaintiff.

The presumption that litigants are *sui juris* when they appear as such may be overcome by evidence to the contrary, and the engagement and appearance of counsel has no conclusive bearing. " . . . a court . . . should, appoint a *guardian ad litem* for a litigant in a case before it whenever by reason of minority or mental unsoundness one is required; and . . . whenever the question arises as to whether such a

guardian is required the court has jurisdiction to consider and decide it. And this jurisdiction . . . is a part of and incidental to its general jurisdiction over the case and the parties properly before the court." *Welch* v. *Fox*, 205 Mass. 113, 114. "It may well be maintained that it is the duty of the court to guard carefully the rights of those who cannot act upon their own judgment because they are *non sui juris*. The discretion in this regard, however, is to be directed rather to the situation developed by the proceeding itself after the court has taken cognizance of the merits, than to a determination *in limine* of the rights involved and without knowledge of the merits. Courts have discretion in this regard." *State* v. *District Court*, 38 Mont. 166.

*Case discharged.*

All concurred.