Hillsborough,
Nov. 7, 1933.

J. ABRAHAM GUAY, *Ex'r v.* BROTHERHOOD BUILDING ASS'N & *a.*

*Aimé E. Boisvert*, for the plaintiff.

*Wason & Guertin, Emile Lemelin* and *Ernest R. D'Amours (Mr. Guertin* orally), for the defendants.

ALLEN, J.   The litigation between the parties has covered a wide range, as is shown by the voluminous character of the master's reports.   There are here for consideration, however, as the essential issues, only the inquiries how far the note is a matured debt of the corporation and, so far as it is a debt, if the stockholders are liable.

The defendants say that the principal of the note was payable only after payment of the first lien mortgage debt from the income of the property and that the foreclosure by the testatrix of her mortgage made such payment impossible, thus estopping the plaintiff from claiming either principal or interest.

In construction of the note, the condition that the principal should not be demanded until the first lien mortgage debt was paid from the income of the property, meant at most that it should be operative only while the mortgagor received the income.   It did not mean that it must be met regardless of circumstances preventing its fulfillment.

The condition only regulated demand for payment and contemplated no discharge of the debt by other ways than payment.   It was of benefit to the maker in giving it time to take care of its prior obligations, and their discharge would strengthen the security of the note of the testatrix.   The discharge of the first lien would make hers

a first lien.   The terms of the note thus regarded are reasonable in their advantage to both parties.   But to give them inflexible force would furnish the maker an unfair escape from a just debt.   For the payee to lose all chance of payment by the maker's loss of the property, ridding it of all liability, is harsh and unreasonable in its one-sidedness.   It would penalize the payee for an event not brought about by her.   As between a construction giving reasonable effect to a contract and one producing unreasonable results, the former more probably expresses what the parties contemplated and meant by the language they used, without resort to the rule of construction by which doubtful language is resolved against the maker of an instrument.

If the mortgagor had conveyed away its equity, it would be in no position to say that its liability to pay the principal had terminated. It is no better off in its loss of title by foreclosure of the first lien mortgage.   The evident implication of the condition is that there should be ownership from which income might be derived.   Ownership to make income a possibility was at most contemplated.   Loss of ownership meant a loss of benefit of the condition.

The note sets forth no such limitation of liability as the defendants assert.   Payment of the note at all events was promised.   The condition related only to the time of payment.   Circumstances destroying the operation of the condition, the condition became inoperative. There was no purpose to defer payment after it became impossible to pay the first lien mortgage debt in the manner the note set forth.   Failure of method of payment of other debts constituted no discharge of the note.

The ruling in the prior litigation that the principal of the note was not due when foreclosure by the testatrix was attempted was no adjudication that the principal would not be payable until the debt first secured was paid from the income of the property.   The issue of liability upon the note after the mortgagor lost either possession or ownership was not then litigable.   The ruling was but *dictum* with reference to such a loss.   The only inquiry as to liability on the note was whether payment might be demanded while the mortgagor remained in possession and the debt first secured remained unpaid.   The effect of loss either of possession or of title was not determined by the ruling that payment might not be demanded during its possession. The principles of *res adjudicata* therefore have no bearing.

In respect to the claim of estoppel, the defendants sought and obtained an annulment of the foreclosure by the testatrix.   As between

the parties the *status quo ante* was thus restored at the defendants' instance.

The mortgagor had notice of and was present at the foreclosure sale and had opportunity to protect its rights. And if it be assumed that the wrongful action of the testatrix gave the mortgagor the right to rescind its contract evidenced by the note, it elected not to exercise the right. In taking the position that the foreclosure was an inoperative and ineffective nullity, it is estopped from saying that the foreclosure did operate and was effective to terminate liability for the note. The right of rescission rests upon affirmance of the other party's wrong as a thing done and perpetuated. To seek its undoing is to waive the right. "Either restoration of the property with allowance for incidental damage or its value measured full compensation for the injury. To grant both would violate the rule of policy against civil penalties." *Moore* v. *Roxbury*, 85 N. H. 394, 396. Restoration of the property was not here in fact made, but this was due to its loss through the valid action of a third party.

The illegal foreclosure did not destroy the mortgagor's title without its election that it should. All it did was to wrongfully deprive it temporarily of possession. Except as temporarily clouded, the title was not impaired by a foreclosure it sought successfully to have adjudged void.

The invalid foreclosure sale being annulled, the credit of the price brought for the property at the sale towards the debt was also annulled. The sale failing, the payment failed.

Unless the foreclosure of the first lien mortgage and the ensuing loss of the mortgagor's title by reason of it resulted from the wrongful possession taken and held by the testatrix, the ground of estoppel that her wrong made performance of the condition impossible is not available. In itself wrongful dealing with the security for a debt is no discharge of the debt. *Mercier* v. *Company*, 84 N. H. 59, 64. Causal relation between the wrong and the loss must be shown. As to this, the master reported that no evidence of any damage or loss to the mortgagor from the wrong was presented. The mortgagor's right to avoid a foreclosure of the first lien mortgage by payment of the debt it secured was therefore at no time interfered with. The failure of restoration was due solely to its own default in not paying the debt, and the testatrix was in no wise responsible for the default. There being no evidence of loss of title by reason of anything she did, the claim of estoppel on this ground also fails.

Damages caused by the wrong of the testatrix may be proved and

allowed in recoupment to reduce the amount due on the note to her. But the claim that her conduct prevented payment of the note according to its terms must be held to be finally adjudicated adversely to the defendants. They pleaded that any default on their part was due to the wrong, and the issue was thus definitely raised and made its determination final between the parties. *Chesley* v. *Dunklee,* 77 N. H. 263. There is an estoppel "as to matters technically in issue in the former suit and either actually litigated or admitted by the pleadings." *Webster &c. Bank* v. *Company,* 85 N. H. 186, 189.

The personal liability of the stockholders arises by force of the statute (P. L., c. 228, s. 2). The defendants underestimate its force. Designed to protect creditors, it prescribes an unqualified liability of the stockholders until certain things are done. The fact that the corporation has obtained money from other sources than the stockholders' subscriptions to its capital, whether by loan, gift or earnings, and has used it for the benefit of the creditor seeking to establish the stockholders' liability, furnishes no defence. Only until the capital is paid in and a certificate of the fact duly recorded, are the stockholders relieved. *Hub Construction Co.* v. *Breeders' Club,* 76 N. H. 289, 290, 291. "The law thus makes the stockholders . . . answerable, . . . in the same capacity as though they were partners; placing them on the same footing in that respect as though they had not been incorporated." *Erickson &c. Co.* v. *Nesmith,* 46 N. H. 371, 374.

*Plaintiff's exception sustained.*
*Defendants' exception overruled.*

WOODBURY, J. did not sit: the others concurred.