John J. SHANAHAN et al., Defendants,
Appellants,

v.

GEORGE B. LANDERS CONSTRUC-
TION COMPANY, Inc., Plaintiff,
Appellee.

No. 5425.

United States Court of Appeals
First Circuit.

May 1, 1959.

John Lewis Connolly, Brighton, Mass., for John J. Shanahan and John J. Shanahan, Inc., appellants.

William R. Gilman, Malden, Mass., for National Financial Acceptance Corp., appellant.

Frank Mulready, with whom Wm. Bartley Shevory, Boston, Mass., and Allen Backer, Brighton, Mass., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a final judgment entered for the plaintiff in a civil action properly brought in the court below under its diversity jurisdiction. Title 28 U.S.C. § 1332(a) (1). The plaintiff is, or was,[1] a New Hampshire corporation engaged in the construction business with its principal office in Newington in that state. The defendants are two Massachusetts corporations and an individual citizen of that Commonwealth. There can be no doubt whatever that enough is in controversy to confer federal jurisdiction.

The complaint alleged the conversion of a power trench hoe, for which a joint and several money judgment was demanded against all three defendants. The defendants answered denying the conversion and in addition the individual defendant, John J. Shanahan, interposed a counterclaim for rental allegedly due him on other equipment leased to the plaintiff. After trial without a jury the court below on the basis of its findings of fact and conclusions of law gave judgment for the plaintiff in the amount of $12,500, plus interest, and judgment for the individual defendant on his counter claim in the amount of $3,600.-70, plus interest. The plaintiff did not appeal from the judgment entered against it on the counterclaim of the individual defendant. That aspect of the case is therefore not before us. Our sole concern is with the propriety of the judgment entered for the plaintiff from which all three defendants have appealed.

The following facts can be taken as established. On August 31, 1953, one of the corporate defendants, John J. Shanahan, Inc., agreed in writing to sell to the plaintiff, and the plaintiff agreed to buy from Shanahan, Inc., a trench hoe powered by a diesel engine described in detail and by serial number for $24,729, delivery to be "as soon as possible," F.O.B. Burlington, Vermont. Before the hoe was delivered this agreement was superseded by a conditional sale contract under which Shanahan, Inc., agreed to sell the same hoe to the plaintiff at the same price plus a finance charge and the plaintiff agreed to purchase it and to pay for it in monthly instalments. A representative of Shanahan, Inc., brought the conditional sale contract and its accompanying promissory note to the plaintiff's office in

---

1. In the plaintiff-appellee's brief it is incidentally asserted that the plaintiff corporation is "now dissolved." But since there is nothing in the record to support the statement or any suggestion that this case is now moot, we treat the remark as without legal significance on the assumption that even though dissolved the plaintiff corporation still exists as a legal entity for the purposes of this case.

Newington, New Hampshire, where both documents were duly executed by the plaintiff's president. The contract was then signed on behalf of Shanahan, Inc., at its place of business in Brighton, Massachusetts, and immediately thereafter it and the promissory note which went with it were assigned, with recourse, to the third defendant, National Finance Corporation.

Although the conditional sale contract, unlike the straight purchase and sale contract which preceded it, specified no place of delivery, the hoe was in fact delivered to the plaintiff in Burlington, Vermont, as originally agreed. The plaintiff used the hoe on a job which it was doing at the Burlington airport, and when that job was completed, shipped the hoe to Newington for use on a job it had at an air base under construction there. The machine remained in Newington until it was repossessed under the circumstances presently to be described.

The plaintiff never met any instalment called for in its conditional sale contract when it fell due and in consequence the Finance Company made many demands upon it for payment. On December 20, 1954, however, the plaintiff paid $2,500 to cure all its prior defaults and bring its total payments on the hoe to $17,198.89. The next instalment which fell due on December 28, 1954, was not met, and, to quote the finding of the District Court: "On January 6, 1955, and very early in the morning, Shanahan, as agent for the Finance Company, simply took the equipment without the consent or knowledge of the plaintiff from its place in Newington, New Hampshire, and removed it to Brighton." Shanahan, Inc., paid the balance due to the Finance Company and then, without giving notice to the plaintiff, sold the hoe to Shanahan the individual for the amount of that balance plus certain costs which in gross came to approximately $8,300. Subsequently Shanahan the individual, after making some repairs to the hoe and converting it into a power shovel, sold it for about $15,000 to a third party.

The court below ruled and the parties concede that if the law of Massachusetts applies the plaintiff has no claim for the reason that the defendants in repossessing the hoe as they did acted in full compliance with the provisions of the Massachusetts Conditional Sales Act, Mass.G.L., c. 255 §§ 11–13H, and thus extinguished the plaintiff's right of redemption. On the other hand, it was ruled by the court below and is likewise conceded by the parties, that the opposite result would have to be reached if the law of New Hampshire applies. The reason for this is that repossession by a conditional vendor without prior notice in writing to the conditional vendee, plus immediate removal of the repossessed property from the state, violates the provisions of N.H.Rev.Stat. c. 361 §§ 18, 19 which require a conditional vendor either to give written notice to the conditional vendee not more than forty nor less than twenty days prior to retaking, or else, after retaking without such notice, to retain the property within the state for ten days after repossession, during which time on tender of the amount in default under the contract, with interest, expenses of retaking and costs of keeping and storage, the conditional vendee "may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred." The District Court ruled that the law of New Hampshire applied and we agree.

■ The court below quite rightly recognized that it must follow the choice of law rules of the forum, Massachusetts, in deciding what law to apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 128 A.L.R. 394, certiorari denied 1940, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415. Also the court below very appropriately began its study of the problem presented by the case at bar with consideration of Jewett, Inc. v. Keystone Driller Co., 1933, 282

Mass. 469, 185 N.E. 369, 371, 87 A.L.R. 1298, a case in some respects like the present, on which the appellants heavily rely.

The Jewett case, like the one at bar, was an action for conversion of a piece of heavy construction machinery—in that case a gasoline powered shovel—brought by a conditional vendee against a repossessing conditional vendor. The plaintiff-vendee therein was a Massachusetts corporation with its principal office in that Commonwealth and the defendant-vendor was a Pennsylvania corporation with its principal place of business in that Commonwealth but with a sales agent in Massachusetts. The contract of conditional sale of the gasoline powered shovel was executed in Massachusetts and the purchase price was payable at a Massachusetts bank. It does not appear where the shovel actually was when the contract was signed but it was delivered as the contract required F.O.B. Manchester, New Hampshire. It was used for a short time in New Hampshire and then remained in storage in that state until, the buyer being in default, the defendant-vendor took possession of the shovel, immediately removed it to Connecticut, and there sold it, without giving notice to the plaintiff-vendee as the New Hampshire statute required.

On these basic facts a divided court held that the law of Massachusetts, rather than the law of New Hampshire, applied. Mr. Justice Crosby writing for the majority rested the conclusion that the law of Massachusetts governed on the proposition that, unless a contract is entered into with either explicit or implicit reference to the law of a particular state, the "rule is that the nature, validity, and interpretation of a contract are to be governed by the law of the place where it is made." The court disposed of the suggestion that the law of New Hampshire applied by stating:

"The evidence warranted the inference that the delivery of the shovel in Manchester, New Hampshire, was for the convenience of the plaintiff in doing work in that neighborhood lasting, at most, only for a season and that the shovel was intended to be removed to Massachusetts or to any other place where the plaintiff obtained another contract. It could have been found by the trial judge that the parties had no intention that the performance of the contract of conditional sale was to be in New Hampshire, or that the law of any other state was to govern their rights. In these circumstances, the fact that the delivery happened to be in New Hampshire is immaterial."

Mr. Justice Lummus in dissent rejected characterization of the problem as one of contract. He treated the problem instead as one of property, saying:

"This case does not relate to the formation, the nature, the validity, the interpretation or the performance of the contract; although much of the performance, if that were material, was to take place in New Hampshire. This case depends upon the situs of the shovel and of the relationship of conditional seller and conditional buyer with regard to it, and upon the application of state laws to a chattel and a relationship having that situs."

Thus he stated the question posed as: "Did the shovel have such a situs in New Hampshire as to come within the scope and sweep of the New Hampshire statute?" Placing reliance for the most part on tax cases, Mr. Justice Lummus answered the question he posed in the affirmative concluding his remarks on the point with the statement: "If I am correct in thinking that the right of redemption given by the New Hampshire statute applied to the shovel, either because the shovel was in New Hampshire when the interests of the parties under the conditional sale became vested (see, also, American Law Institute Restatement of the law of Conflict of Laws, Restatement No. 3[1927], § 302), or on

the other ground suggested in the Proposed Final Draft No. 2, § 302, that the law of the state in which the chattel is situated when foreclosure or redemption proceedings are begun shall govern, then that right of redemption under the New Hampshire statute was not divested by the removal by the defendant of the shovel into Connecticut, and a different right of redemption under Massachusetts law or Connecticut law was not substituted."

From the decision in the Jewett case we may infer that the Supreme Judicial Court of the Commonwealth of Massachusetts, were it deciding the case at bar, would treat the fact that the power hoe was delivered in Vermont as "immaterial." For here, as in Jewett, the evidence warrants the inference that delivery in Vermont was only for the convenience of the purchaser in performing a single contract in that state and on completion of its work there the plaintiff-purchaser intended to remove the shovel to its headquarters in New Hampshire or to some other place, in New Hampshire or elsewhere, where it might obtain another contract. This eliminates the law of Vermont from our consideration. Furthermore, we may also infer from the Jewett case that under circumstances like the present the Massachusetts court would not concern itself with the law of the state where the shovel was when the contract for its conditional sale arose and the rights of the parties with respect to it were created. We say this because there is no reference in the majority opinion in the Jewitt case to the place where the shovel was when the

contract for its conditional sale was entered into. In choosing Massachusetts law as the law to apply, the majority gave controlling consideration to the place where the contract of conditional sale was entered into, and did not even mention the place where the shovel was when that contract was made. There is only the passing reference in the above quotation from the dissenting opinion of Mr. Justice Lummus to indicate that at the time of the contract the shovel was actually in New Hampshire, but Mr. Justice Lummus did not rely upon that fact alone for his conclusion. He relied primarily upon the shovel's presence in New Hampshire at the time of repossession for his conclusion that New Hampshire law applied. Indeed, under circumstances like the present, to apply the law of the place where the chattel is at the time of contracting might well produce the incongruous result of applying the law of some state with which neither the parties nor the transaction had any substantial contacts whatever. That is to say, it might require application of the law of the state where the chattel was manufactured (we were given to understand at oral argument that the power hoe involved herein was manufactured in a middle western state), and where after shipment that chattel might never be again and where the parties neither contracted nor resided. It might even require application of the law of a state through which the chattel was only in transit from the state of its manufacture to the state of its delivery. Thus, Am.Law Inst., Restatement, Conflict of Laws, § 281, quoted in the margin[2] to the contrary

---

2. "§ 281. Foreclosure and Redemption of Mortgage, Pledge or Lien.

"The power to foreclose a mortgage, lien or pledge on a chattel and the right to redeem are determined by the law of the state in which the chattel was at the time of the mortgage, lien or pledge."

No doubt this rule is eminently practical in the vast majority of cases. But, as we have pointed out, on the facts of this case it might well operate to invoke the law of a state with which the prop-

erty was about to lose contact for good, or had at the most only a fleeting or transitory contact, and in which the parties did not contract or reside. In this situation we think most courts would heed Chief Justice Peaslee's comment in Gray v. Gray, 1934, 87 N.H. 82, 89, 174 A. 508, 512, 94 A.L.R. 1404: "No rule or set of rules has yet been devised which will make the conflict of laws a logical whole. There are places where logic has to give way to evident facts. In

notwithstanding, it would seem that under Massachusetts law as expounded in the Jewett case there is no occasion for us to send this case back to the court below to find out where the power hoe actually was on the date of its conditional sale—whether it was still in the state of its manufacture, wherever that was, or in some other state on its way to its place of delivery in Vermont.

■ As we understand the law of Massachusetts our choice lies beween the law of Massachusetts and the law of New Hampshire. The appellants strongly urge that the Jewitt case requires us to choose the law of Massachusetts. We do not think so.

The court below distinguished Jewett on the ground that the majority of the court in that case placed emphasis on the fact that the shovel was not permanently located in New Hampshire but was only delivered in that state for the convenience of the purchaser, who was a citizen of Massachusetts, whereas in the instant case the purchaser was a New Hampshire corporation with its principal place of business in that state. On these facts the District Court thought the majority in the Jewett case might well have reached the result advocated by the dissenting justice. And it reinforced its conclusion by reference to Budget Plan v. Sterling A. Orr, 1956, 334 Mass. 599, 137 N.E.2d 918, 920, in which, in holding that the law of Connecticut applied to determine whether a contract of conditional sale executed in Connecticut with respect to a chattel located in that state, but not notarized as required by local law, operated to reserve a security title in the vendor, the court took occasion to point out in a footnote that the holding in Jewett appeared to be "contrary to the prevailing view" and implied, although it expressly did not decide, that perhaps it might now reach a different result on the facts there presented. Budget Plan certainly does not overrule Jewett. But it does

seem to us that the remarks in the later case indicate that the Supreme Judicial Court of Massachusetts now would not be disposed to extend the rule of the Jewett case to facts like those in the case at bar, where the purchaser of the chattel was not a Massachusetts corporation but a New Hampshire corporation with its headquarters in that state and where in addition the shovel was not only located in New Hampshire when it was repossessed, but also where the shovel would presumably be kept when not in use on out-of-state jobs.

Having concluded that New Hampshire law governs and that the statute of that state relating to conditional sales was not complied with when the hoe was taken without prior notice and immediately removed from the state, we come to the question of the amount of damages to which the plaintiff is entitled by reason of the defendants' wrongdoing.

■ The District Court ruled that the plaintiff was entitled to recover "the value of the trench hoe—$12,500 with interest at six percent," and entered its judgment accordingly. We think the court erred in the amount of its award.

The New Hampshire variations of the provisions as to damages of the Uniform Conditional Sales Act were designed to make those provisions of the Uniform Act consistent with the law as previously established in that jurisdiction under prior statutes. Randall v. Pingree, 1956, 100 N.H. 322, 324, 325, 125 A.2d 658. We therefore turn to earlier cases for the meaning of § 26 of the New Hampshire Conditional Sales Law, RSA ch. 361 § 26, wherein it is provided that in the event the seller fails to comply with the law's requirements with respect to repossession and resale thereafter, "the buyer may recover from the seller his actual damages, if any; and regardless of the final disposition of any goods retaken because of any default mentioned in section 17,[3]

these places horse sense has prevailed over the deductions of the schoolmen. It should continue to do so."

3. The plaintiff's failure to pay the instalment due on December 28, 1954, was a default mentioned in § 17.

the seller may recover any loss which he suffers by reason of the fact that goods so retaken are insufficient to pay the balance of the purchase price and all reasonable expenses incurred within thirty days after the retaking for retaking, storing and selling the same."

This does not mean that the conditional buyer is entitled to the fair market value of the security at the time and place of its repossession by the conditional seller. Neither the buyer nor the seller is absolute owner of the property. The seller retains legal title to it as security for the unpaid balance of the purchase price; the buyer has the equitable right to become the absolute owner of the property upon his performance of the conditions of the contract of purchase. Cutting v. Whittemore, 1903, 72 N.H. 107, 54 A. 1098. Damage to the rights of the seller by the buyer, or vice versa, affords the one damaged the right to recover compensation for the harm done to his interest in the chattel, no more. Thus the fact that a seller by his wrongful action with respect to the security deprives the buyer of his right to redemption does not entitle the buyer to recover the full value of the property from the seller.

"The statute for conditional sale foreclosures only prescribes the one rightful way in which the vendee's equity of redemption may be barred. It does not undertake to deal with a wrongful deprivation or destruction of it. If the vendor carelessly destroys the property or wrongfully disposes of it, he is liable for damages on ordinary theories of compensating injury, and the statute carries no implication of release of the vendee for what he owes. Wrongful dealing with the security under no reasonable theory of the law can operate to discharge a just debt."

Mercier v. Nashua Buick Co., 1929, 84 N.H. 59, 64, 146 A. 165, 168. The vendee, if the vendor has put an end to the vendee's right of redemption by disposing of the property, is entitled to an accounting from the vendor, wherein the latter "must give credit for the value of the property or for whatever he receives for it, whichever is greater, and for any other proper elements of damage sustained by the vendee. That being done, the vendee is entitled to any balance after the credit is applied over and above his own debt." Id., 84 N.H. 63, 146 A. 168. "And the vendor's expense in repairing the [repossessed] truck is to be given allowance for its bearing in determining its value of the net proceeds of the sale." Id., 84 N.H. 64, 146 A. 168. Moreover, although on first impression it may seem rather strange, it would appear that the vendor herein may take credit in his accounting for "all reasonable expenses incurred within thirty days after the retaking for retaking, storing and selling" the property. We come to this conclusion because under the New Hampshire statute no wrong was committed in taking possession of the shovel without prior written notice to the plaintiff. The wrong consisted in the immediate removal of the shovel from New Hampshire and selling it without the prior written notice to the plaintiff required by the statute, whereby the plaintiff was deprived of the opportunity afforded him by the statute to cure his default. That is to say, the wrong consisted not in taking possession of the shovel, but in disposing of it, and § 26 of the statute quoted above specifically permits the seller to recover the expenses enumerated above "regardless of the final disposition" of the property retaken. Randall v. Pingree, 100 N.H. 322, 326, 125 A. 2d 658, 660.

Our conclusion from the foregoing consideration of the New Hampshire Conditional Sales Law as construed in decisions of the New Hampshire Supreme Court is that the plaintiff is entitled to recover the fair market value of the hoe at the time it was taken, or the amount for which it was resold less the expenses of the vendor incurred in repairing it, whichever amount is the greater, less the unpaid balance of the

purchase price and less "all reasonable expenses incurred within thirty days after the retaking for retaking, storing and selling" the hoe. Furthermore, the plaintiff may also collect whatever other "actual damages, if any" it may succeed in establishing by the balance of the probabilities.

In view of this conclusion there is no need to consider questions raised by the appellants with respect to the admission and exclusion of certain evidence.

Judgment will be entered vacating that portion of the judgment of the District Court which provided for recovery for the plaintiff and remanding the case to that court for further consistent proceedings.